### TEXAS EMPLOYERS' INS. ASS'N v. OLESKY. (No. 1307.)*

(Court of Civil Appeals of Texas. Beaumont. Nov. 5, 1926. Rehearing Denied Nov. 17, 1926.)

1. **Trial ⬅️352(5)—Issue, requiring finding on permanent loss of use of foot by reason of injuries complained of, held not to have intermingled material issues of fact (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, art. 8306 et seq.]).**

Where employee, in suit against insurer, relied for recovery on specific injury received in course of employment, as defined in Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.), and for general injuries to leg, issue, submitting question of whether permanent loss was sustained by reason of injuries complained of in petition, held to have properly submitted issue and not to have intermingled material issues of fact; issue as to other injuries being subsequently submitted under instructions that they were not to be answered, if first issue was found in affirmative.

2. **Trial ⬅️352(5)—Issue, submitting question of loss of use of foot, held not subject to attack for assuming loss thereof.**

Issue, submitting question of whether plaintiff lost use of foot by reason of injuries complained of in petition, held not subject to attack, in that court assumed loss of use of foot therein.

3. **Trial ⬅️352(5)—Issue, submitting question of total loss of use of foot, held not to have intermingled ultimate issues of fact.**

Issue, submitting question of whether plaintiff sustained total loss of foot by reason of injuries complained of in petition, held not to have intermingled ultimate issues of fact.

4. **Trial ⬅️352(5)—Issue, submitting question of loss of foot from injuries, held not to have assumed disputed issue of fact as to receiving injuries.**

Issue, submitting question of total loss of use of foot by reason of injuries complained of in petition, held not to have assumed disputed issue of fact relative to receiving injuries.

5. **Master and servant ⬅️417(5)—Finding of permanent injury and fixing period of total incapacity of 250 weeks held not contradictory, where compensation was claimed and allowed for 125 weeks.**

Jury's finding that injury was permanent held not contradictory with finding fixing period of total incapacity of 250 weeks, where claim was only made and compensation allowed for 125 weeks.

**6. Master and servant ☞417(5)—Conflicting evidence on total incapacity held properly submitted to jury.**

Conflicting evidence on total incapacity of employee resulting from injury *held* properly submitted to jury.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by Jacob Olesky against the Texas Employers' Insurance Association. Judgment for plaintiff and defendant appeals. Affirmed.

Orgain & Carroll, of Beaumont, for appellant.

C. A. Lord, of Beaumont, for appellee.

WALKER, J. While in the course of his employment, as that term is defined under our Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, art. 8306 et seq.), appellee suffered a serious injury, resulting for a time in an admitted total incapacity. The appellant, whose policy of insurance protected the appellee, admitted its liability when the injury was first reported and for about nine months paid the statutory compensation, but, believing that he had recovered, it refused further payment. The issue between appellee and appellant was referred to the Industrial Accident Board, who sustained appellant's contention. From the award thus made, appellee duly perfected his appeal and instituted this suit to recover the relief claimed by him. Appellee makes the following succinct statement of the nature of his suit:

"The plaintiff in his petition relied on two separate and distinct causes of action for his recovery. After setting out the facts touching his employment, and the relation of his employer to the appellant, Texas Employers' Insurance Association, and the term of his service, his wages, etc., as set out in the appellant's general statement, the appellee alleged that, while he was engaged in his employment and in the performance of his duties, he received personal injuries entitling him to compensation under the Compensation Law of this state.

"In the first place, he alleged that the injuries so received by him were these: That his right foot, and the bones, ligaments, muscles, and organs thereof, were broken, sprained, displaced, and severally injured, so that the plaintiff sustained the loss of the use of the foot, and so that the injuries thereto were total and permanent, and that, by reason of this specific injury, the plaintiff became entitled to receive from the appellant compensation as for the loss of the foot; that is, for a period of 125 weeks at the maximum rate of $15 per week, or a total compensation for the alleged specific injury, arising from the loss of the use of the foot, of the sum of $1,875. And he alleged that he had received compensation from the appellant amounting to the sum of $465, which should be deducted from the $1,875. Such was the first issue presented by the petition.

"In addition to this issue, the plaintiff alleged in his petition that he was likewise injured in the muscles and ligaments and tendons of the right leg between the ankle and the knee, so that the functions thereof were very greatly impaired, so that he had not the same use of the leg below the knee as formerly, and so that the use was permanently and partially impaired; and he alleged in this connection that he likewise sustained injuries in the muscles, ligaments, and tendons of the thigh and hip and hip joint, so that the use of that portion of the body was greatly impaired; and he alleged that these injuries were permanent and partial, and that the impairment of the use of the entire right member was permanent and partial, and that there was a very substantial proportion of the use of the member lost by the injury. And the plaintiff further alleged that, if he was not entitled to receive the compensation as for the specific injuries—that is, the loss of the use of the foot—he was entitled to recover for the permanent partial incapacity according to the extent of his impairment, under the terms of the Compensation Law of this state, as such impairment might be determined by the court.

"And in this connection it was alleged that the plaintiff had engaged in the work of operating oil wells for many years; that he was skilled in the work of operating machinery and appliances in connection therewith, and that such business required an employee to be strong and sound in his members, and that on account of his injuries he had become wholly unfitted for such character of work, so that he could not perform any of such services as he had formerly done, and that on account of his injuries he was physically unable to engage in any service or employment of a similar nature, and that on account of such injuries he was and would continue to be denied the privilege and opportunity of employment, and on account of his injuries and crippled condition he was not able and would not be able in the future to procure employment.

"The plaintiff alleged further that he was entitled to recover compensation against the defendant for the specific injury aforesaid in the amount thereof, or, if he was not so entitled to recover for the specific injury, he was then entitled to recover compensation as for total permanent incapacity or partial permanent incapacity, as might be determined upon the trial of the case, and he prayed for judgment accordingly."

The nature of appellant's defense is outlined in the court's charge, which was as follows:

"In this case the plaintiff, Jacob Olesky, sues the defendant, Texas Employers' Insurance Association, claiming compensation. The plaintiff alleges that he received certain personal injuries as described in his petition while in the employ of the Sun Company on or about the 28th day of April, 1923; and he alleges that the said Sun Company was a subscriber within the terms of the Compensation Law, and that the defendant in this suit had issued a policy of insurance covering the employees of the said Sun Company, and that at the time of his injury he was receiving the sum of $31.50 per week as his average wage; and he alleges that on account

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of his injuries he became entitled to compensation according to the terms of the Compensation Law of this state and in one of the respects set out in his petition.

"The defendant, in answer to the plaintiff's petition, denies all and singular the allegations contained therein, and it further alleges that, if the plaintiff received any incapacity to perform ordinary physical manual labor, it terminated on December 14, 1923, and that since that time the plaintiff has been able at all times to perform ordinary physical manual labor and to earn wages, and that there has been no physical incapacity since that time.

"The case will be submitted to you on what is termed special issues, which you will answer on a separate sheet of paper, numbering your answers to conform to the numbers of the special issues or questions submitted to you by the court. Your answers to these special issues will constitute your verdict.

"Special Issue No. 1. Has the plaintiff sustained the permanent loss of the use of his foot by reason of the injuries complained of in his petition? Answer 'yes' or 'no' as you may find the facts to be.

"In connection with special issue No. 1 you are instructed that by 'loss of use' is meant whether the foot is so affected, permanently, as to substantially and materially impair the use thereof in the practical performance of its functions in the pursuits of a laboring man. If the foot is so affected there is a loss of use. If the foot is not so affected then there is no such loss of use.

"Special Issue No. 2. If you answer special issue No. 1 'no,' and only in that event, you will answer this question: Has the plaintiff, by reason of his injuries as set out in his petition, sustained any partial incapacity which will impair his future usefulness or occupational opportunities? Answer 'yes' or 'no' as you find the facts to be.

"Special Issue No. 3. If you answer special issue No. 2 'yes,' and only in that event, then answer this question: What percentage of incapacity do you find that the plaintiff has sustained by reason of his injury? Answer this question by stating such percentage as you may find the facts to be.

"In connection with special issue No. 3 you are instructed that in answering this question you may take into account any previous incapacity, the nature of the physical injury, and plaintiff's occupation, and his age at the time of the injury in question.

"Special Issue No. 4. If you have answered special issue No. 2 'yes,' then you will answer this question: How long—that is, for how many weeks—should the plaintiff receive compensation on account of his partial incapacity? Answer this question by giving the number of weeks, as you may find the facts to be.

"In connection with this special issue you are instructed that under the law the number of weeks cannot exceed 300.

"Special Issue No. 5. Did the plaintiff sustain any total loss of the use of his foot by reason of the injuries complained of in his petition? Answer 'yes' or 'no' as you may find the facts to be.

"Special Issue No. 6. If you answer special issue No. 5 'yes,' and only in that event, then answer this question: How many weeks of total loss of the use of his foot did the plaintiff sustain by reason of his injuries? Answer by giving the number of weeks, as you may find the facts to be.

"Defendant's Requested Special Issue No. 1. Was the plaintiff incapacitated after December 14, 1923, to do and perform ordinary physical manual labor?

"Defendant's Requested Special Issue No. 2. If you have answered defendant's special requested issue No. 1 'yes,' and only in that event, then answer this issue: What percentage of incapacity, if any, existed after December 14, 1923, to plaintiff's foot? Answer by stating the percentage.

"Defendant's Requested Special Issue No. 3. If you have answered defendant's requested special issue No. 2 by stating a percentage, and only in that event, then answer this issue: For what period of time, if any, did said percentage run?"

The jury returned its verdict as follows:

"To special issue No. 1 in the main charge, we answer, yes. To special issue No. 2 in the main charge, we answer, ——. To special issue No. 3 in the main charge, we answer, ——. To special issue No. 4 in the main charge, we answer, ——. (To special issue No. 5 in the main charge, we answer, yes. To special issue No. 6 in the main charge, we answer, 250 weeks. To defendant's special requested issue No. 1, we answer, yes. To defendant's special requested issue No. 2, we answer, 100 per cent. To plaintiff's requested special issue No. 1, we answer, 250 weeks."

It appears from the court's charge and the verdict of the jury that the jury did not attempt to answer any questions except as to the injury to the foot. The judgment of the court was based primarily on the answer to issue No. 1, the other answers being only in further explanation of that issue, and was for the statutory compensation period of 125 weeks at $15 per week, less the sum $465 which had been paid by appellee to appellant.

### Opinion.

[1] By its first and tenth propositions, appellant claims that issue No. 1 "intermingled material issues of fact and did not permit the jury to answer as to each material issue of fact separate and apart from each other; there being an issue whether the plaintiff received any injury to his ankle that would affect the use of his foot and whether he received an injury to the leg between the ankle and the knee that would affect the use of his foot." This proposition has no merit. Appellee relied for recovery on two grounds: One of a specific injury to his foot, which was properly submitted under the issue attacked by this proposition; the other of general injuries to his leg, which were submitted under issues 2, 3, and 4, and which were not answered, under the court's instructions that they were not to be answered, should issue No. 1 be answered in the affirmative.

[2] Under its second and third propositions, appellant makes the further attack on

issue No. 1 that it was on the weight of the evidence, in that the court assumed that appellee had lost the use of his foot. This criticism is not well taken. This issue was fairly submitted, without any comment by the court or suggestion from it that could have had the least effect on the minds of the jury in answering that issue.

[3, 4] Issue No. 5 is attacked by the fourth proposition, on the same ground urged against issue No. 1. The fifth issue clearly did not intermingle the ultimate issues of fact. In criticizing the fifth issue under its fifth proposition, appellant says that the court "assumed in the issue that plaintiff had received injuries when there was a disputed issue of fact as to whether or not plaintiff had received an injury in the ankle joint, etc." A reading of the issue refutes this proposition, for no such assumption was made. But had the assumption been made, the undisputed evidence showed the injury; it appearing from the evidence without dispute that appellee was injured in his foot, and that appellant recognized the injury, and for a time paid him compensation therefor.

By propositions 6 and 7 appellant makes the same criticism against the other issues as urged against issues 1 and 5. These propositions are without merit.

The eighth and ninth propositions are as follows:

"(8) The jury having found in answer to special issue No. 1 of the court's charge in effect that the plaintiff sustained the permanent loss of the use of his foot by reason of injuries complained of, and in answer to special issue No. 6 of the court's charge, that the plaintiff sustained the total loss of the use of his foot for a period of 250 weeks, and in answer to special issues Nos. 1 and 2, requested by the defendant, that the plaintiff was incapacitated after December 14, 1923, that such incapacity did and would run 250 weeks, shows that the jury did not understand the import of said special issues as worded and could not answer the same intelligently, and that said issues, as worded, are calculated to have caused and probably did cause erroneous findings by the jury upon said issues.

"(9) The jury having answered special issue No. 1 of the court's charge, 'Yes,' to the effect that the plaintiff sustained the permanent loss of the use of his foot by reason of the injuries complained of in his petition, and the jury having answered special issue No. 5, 'Yes,' to the effect that the plaintiff sustained some total loss of the use of his foot by reason of the injuries complained of in his petition, and the jury having answered special issue No. 6, that such total loss of the use of the foot was 250 weeks, sustained by reason of his injuries, the jury having answered defendant's special requested issue No. 1, 'Yes,' to the effect plaintiff was incapacitated after December 14, 1923, to do and perform ordinary physical manual labor, and the jury having answered defendant's special requested issue No. 2, that the percentage of incapacity was 100 per cent., and the jury having answered special requested issue No. 1, requested by the plaintiff, that such incapacity did or would run for a period of 250 weeks, said findings are irreconcilable and contradictory of each other and in hopeless conflict, and therefore cannot support the judgment."

[5] We think appellant is wrong in its criticism, as stated in these propositions. It seems to us clear the jury did understand the issues and made intelligent answers thereto. At last, having fixed the total incapacity period at 250 weeks, far in excess of the statutory period, appellant was not injured by any confusion that may have been in the minds of the jury as to the meaning of the issues. We see no contradiction in the finding that appellee's injury was permanent and in fixing a period of 250 weeks, since appellee claimed and was allowed compensation for only 125 weeks.

By its eleventh proposition, appellant says:

"There being an issue of fact as to whether or not after the alleged injury, plaintiff's incapacity, if any, continued up to the trial of the case, it was the right of this defendant to have the issue for what period of time, if any, did said percentage run, presented to the jury upon an affirmative finding by the jury."

This issue was directly and affirmatively presented to the jury by the court's charge, and the "percentage of incapacity" was fixed at 100 per cent.

By the twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth propositions, appellant says the jury's finding of total incapacity is contrary to the evidence and against the great weight and preponderance of the evidence. We do not so read the testimony. The issue was sharply drawn by the evidence of its surgeons; appellant showing that appellee had fully recovered from an admitted injury. By his evidence, appellee showed loss of the use of his foot by reason of the injuries complained of in his petition, as that term was defined by the court in connection with special issue No. 1. The definition thus given by the court was not criticized by appellant, who thereby, as we think, correctly recognized the soundness of the definition as submitted.

[6] It would serve no useful purpose to quote from the evidence on this issue, since a careful examination of the same by us shows, as we say, a conflict, which was properly submitted to the jury.

For the reasons given, the judgment of the trial court is in all things affirmed.