## FIDELITY UNION CASUALTY CO. v. MUNDAY.
### No. 10480.

Court of Civil Appeals of Texas. Dallas. March 8, 1930.

Rehearing Denied April 5, 1930.

Collins & Houston, of Dallas, for appellant.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellee.

VAUGHAN, J.

Appellant, Fidelity Union Casualty Company, instituted its suit to set aside an award of the Industrial Accident Board made in favor of appellee, J. D. Munday, on account of injuries alleged by appellee to have been received by him on the 8th day of August, 1927, while in the discharge of his duties as an employee of Cramer & Co. at Dallas, Tex., under a contract of hire, whereby he worked for his said employer in the capacity of concrete finisher at a wage of $10 per day, and worked six days in each week.

Appellee duly filed his answer by way of cross-action, in which, among other things, he alleged: "That heretofore to-wit on the 8th day of August 1927, and for a long period of time prior to that date, defendant J. D. Munday was an employee of said Cramer &

Company at Dallas, Texas under a contract of hire, whereby he worked for said Cramer & Company in the capacity of concrete finisher at a wage of Ten Dollars ($10.00) per day, and worked six days in each week; that defendant Munday is by trade a concrete finisher and on the concrete work undertaken by his employers, did the finishing work on the job; that said work is strenuous work, requiring the use of trowel, straight edge, sledge hammers, and other tools; that heretofore, to wit, on the 8th day of August, 1927, said Cramer & Company were engaged on a concrete job in Dallas, Dallas County, Texas; that in connection with such work, said employers always used a heavy machine known as a concrete mixer; that on said date defendant Munday was undertaking to tighten the bowl on the concrete mixer and in so doing, his right hand was caught and crushed between the bowl and the frame of the mixer; that said accident resulted in defendant receiving deep lacerations and bruises on the back of his hand and other serious injuries to his hand, as follows to-wit: a fracture of the second meta-carpal bone and bruising of the soft tissues of the hand; sprains of the joints including the wrists, a dislocation of the terminal phalanges of the third and fourth fingers, a severe wrenching of the tendons of the hand; a decided separation or enlargement of the spaces between the index finger and the second finger of the injured hand, and the displacement of the phalanges of the third and fourth fingers of the hand; that as a result of said injuries to his hand, said hand has become and now is numb and lifeless, and the joints in the fingers of the hand are without the proper amount of flexion and are stiff, and all the joints of the hand and fingers are stiff, so that defendant is unable to close his hand or to exert any use or control over the movements of the same, and defendant suffers continually pain in said hand. The index finger on the injured hand has been forced beneath the middle finger so that it is completely out of alignment, thus making it lack coordination; that the hand becomes swollen and inflamed at frequent intervals, which condition is aggravated by any attempt to use the hand or exercise it; that said injuries have rendered defendant totally and permanently disabled in the use of his right hand; that defendant will always be powerless to ever again use said hand in plying the tools of his trade or in performing any kind of physical labor; that by reason of said injuries, defendant is entitled to receive compensation at the rate of $20.00 per week for a period of one hundred and fifty weeks."

Appellee prayed for "judgment for compensation for 150 weeks at the rate of $20.00 per week from August 8, 1927, less credit for payments of weekly compensation heretofore made, plus interest at the rate of six per cent. on all past due installments of compensation * * * that the award of the Industrial Accident Board be affirmed * * * for costs and for such other relief, general and special, to which he may show himself to be justly entitled, either in law or in equity." Appellant by a general denial joined issue with appellee on the above allegations. It was agreed between the parties that appellant was the compensation insurer; that its policy was in effect and covered appellee at the time of his injury; that appellee gave due and timely notice of his injuries, and made claim for compensation within the statutory time; that the Industrial Accident Board made its final ruling and decision on appellee's claim; that appellant gave due and timely notice of appeal, and within the time allowed by law instituted this suit to set aside the action of the Industrial Accident Board. .

Following are the special issues submitted and answers made thereto by the jury:

"No. 1: Do you find and believe, from a preponderance of the evidence, that the defendant, J. D. Munday, sustained a total loss of the use of his right hand for a period of time as a result of the injuries he received on the occasion in question? Answer, 'Yes.'

"No. 2: How long do you find and believe, from a preponderance of the evidence, that the total loss of the use of defendant's right hand continued from the date of its injuries? You shall answer in the number of weeks. Answer, 'Fifteen weeks.'

"No. 3: Do you find and believe, from a preponderance of the evidence, that defendant, J. D. Munday, suffered and will suffer the partial loss of the use of his right hand resulting from his said injuries? Answer, 'Yes.'

"You are instructed that the term 'partial loss of the use of his right hand,' as used in special issue No. 3, is meant the extent that the injury to his hand in fact destroys or impairs the ability of the hand to be as efficient or competent for work after the injury as it was before.

"No. 4: Do you find and believe, from a preponderance of the evidence, that the injuries sustained by the defendant, J. D. Munday, to his right hand are permanent? Answer, 'Yes.'

"No. 5: What do you find and believe, from a preponderance of the evidence, is the percentage of the permanent partial loss of the use of defendant's right hand? You shall answer giving the percentage. Answer, '75% disabled.' "

The findings of the jury being amply sustained by competent evidence, same are adopted as the findings of fact by this court. The trial court, acting on appellee's motion, on July 19, 1928, rendered judgment on this verdict for appellee for $20 per week for 15

weeks for the temporary total loss of the use of his right hand and for $15 per week for 135 weeks for the permanent partial loss of the use of said hand. Appellant's appeal is before this court upon the following propositions:

"No. 1: Where four different measures of compensation are provided by law, viz.: (1) for general incapacity to work while total, (2) for general incapacity to work while partial, (3) for certain specified losses of members, or the use thereof, without regard to resulting incapacity for work, and (4) for all other cases of partial incapacity in accordance with the degree of incapacity for work and the duration thereof as may be determined by the court, an injured employee who elects to sue for the statutory measure of compensation for permanent and total loss of the use of a hand, to-wit, 150 installments of compensation, irrespective of the existence or not of any incapacity for work caused by the injury, and who does not plead, in the alternative or otherwise, the existence of any facts as to incapacity for work, total or partial, or permanent or temporary, as would entitle him to invoke some other measure of compensation, can recover only upon the theory pleaded, and where the undisputed evidence shows that he has not lost the use of a hand, cannot recover at all."

"No. 2: Where the only measures of compensation provided by law are, (1) for general incapacity to work while total, (2) for general incapacity to work while partial, (3) for certain specified permanent and total losses of members, or the use thereof, without regard to resulting incapacity to work, and (4) for all other cases of partial incapacity in accordance with the degree of incapacity for work and the duration thereof as may be determined by the court, issues as to temporary total loss of use of a hand or permanent partial loss of use of a hand are immaterial, and findings thereon will not support a judgment in a suit for the specific compensation provided for the permanent and total loss of use of a hand."

Appellant contends that the court erred in refusing to instruct the jury to return a verdict in its favor, and further erred in overruling its objections and exceptions to the court's charge to the submission of the issues as to temporary total loss of use, and as to permanent partial loss of use of appellee's hand, on the ground that such issues were not raised by the pleadings, appellee having sued only for a specific injury, to wit, total and permanent loss of the use of his hand, and that such issues were immaterial and could form no basis for a judgment, there being no measure of compensation provided by law for temporary loss of use of hand in any degree, or for permanent loss of use of hand for any duration.

Appellant's requested peremptory instruction was based on the same ground as its objections to the submission of the above issues, and on the same ground assigned as error in its motion for a new trial the action of the court in rendering judgment for appellee, contending that the judgment was not supported by either the pleadings or the verdict.

In support of the above propositions, appellant contends that no incapacity other than the loss of use resulting from the injuries to the hand is alleged in appellee's cross-action, and prayed for no other relief than the compensation provided for the specific injury alleged, viz. loss of the use of his hand; that the evidence did not raise any issue as to a permanent and total loss of the use of the hand, but, on the contrary, it conclusively showed that no such loss of use had been suffered, and that, if appellee had suffered any permanent loss of use of the hand, it was in a partial degree only; and, further, that the court did not submit to the jury any issue as to a permanent total loss of use of appellee's hand, but only whether appellee had temporarily lost the total use of his hand; if so, for what period of time, and whether he had partially lost the use of his hand, and whether such loss was permanent and the percentage thereof.

■ The position assumed by appellant is that, appellee having alleged that he had permanently lost the total use of his hand and was entitled to the specific measure of 150 weekly installments of $20 each, for which compensation and no other he prayed, and having alleged no facts to show that he was entitled to any other measure of compensation, he could not recover on proof of any loss less than that pleaded, either in degree or duration, and therefore the court erred in submitting the special issues on which judgment was rendered, and in rendering judgment for any sum in appellee's favor upon the findings by the jury on said issues.

The position assumed by appellant in reference to the purpose for which the Workmen's Compensation Law was enacted, the ways and means provided for the accomplishment thereof, and the purport of its several provisions to secure compensation to an employee under the terms and provisions of said act, would, if adopted as a proper rule for the interpretation of its provisions, seriously impair, if not divert from its proper course, the simple, exact, and speedy plan of procedure designed to secure to injured employees compensation under said act free from the highly technical rules of procedure at common law; and would render the "schedule or table" of said law, the sole office of which is to determine the amount of compensation that an injured employee is entitled to, a means of denying to such employee compensation to which he was justly entitled, because, in so seeking

compensation, he had failed to claim same under the particular provision of said schedule or table by which compensation for his injuries should be measured. In other words, although an injured employee had clearly established that, under said law, he was entitled to compensation, he would be denied compensation in any sum because he failed to claim same under the particular provision of the table or schedule by which the amount of his compensation should be determined. Such a construction is to us unthinkable as being in accord with the purpose for which said law was enacted. This we think is fully demonstrated by the law within its own terms.

The Workmen's Compensation Law, as enacted by the Thirty-Third Legislature (1913) p. 429, c. 179, was divided into four parts. Part No. 1, being now article 8306, R. S. 1925 (as amended by Acts 40th Legislature [1927] p. 41, c. 28), and with its several sections, embraces all of the law in reference to damages and compensation for personal injuries received by an employee, and among other things provides: "Sec. 1. In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense: 1. That the employee was guilty of contributory negligence. 2. That the injury was caused by the negligence of a fellow employee 3. That the employee had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employee to bring about the injury, or was so caused while the employee was in a state of intoxication." Section 3 in part provides, "The employees of a subscriber * * * shall have no right of action against their employer * * * for damages for personal injuries * * * but such employees * * * shall look for compensation solely to the association, as the same is hereinafter provided for." Section 3b in part provides: "If an employee who has not given notice of his claim of common law or statutory rights of action * * * sustains an injury in the course of his employment, he shall be paid compensation by the association as hereinafter provided, if his employer is a subscriber at the time of the injury." Section 3c in part provides: "From and after the time of the receipt by the Industrial Accident Board of notice from any employer that the latter has become a subscriber under this law, all employees of said subscriber then and thereafter employed, shall be conclusively deemed to have notice of the fact that such subscriber has provided with the association for the payment of compensation under this law." Section 10 provides: "While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $20.00 nor less than $7.00 and in no case shall the period covered by such compensation be greater than four hundred and one weeks from the date of the injury," under amendment by Acts 1917, p. 269, and Acts 1923, p. 384.

Section 11 provides: "While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of the difference between * * * his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than $20.00 per week. The period covered by such compensation shall be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one weeks from the date of injury." Section 11a, added to the Workmen's Compensation Law by Acts 1927 40th Legislature, p. 41, c. 28, § 1 (Vernon's Ann. Civ. St. art. 8306, § 11a) provides that "incapacity shall conclusively be held to be total and permanent" in certain injuries therein specified, and that as to the cases enumerated therein it shall be "considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member"; that said enumeration of injuries in said Act is not to be taken as exclusive, but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

Section 12 provides: "For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent. of the average weekly wages of such employee, but not less than $7.00 per week nor exceeding $20.00 per week, for the respective periods stated herein, to-wit: [Here follows a list of injuries termed "specific injuries," and for each injury enumerated the compensation to be received is fixed]." Section 12 in part concludes as follows: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent. In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same com-

pensation as, the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases" (as amended by Acts 38th Legislature 1923, p. 384, c. 177, § B).

Section 12d provides: "Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this law. * * * Review under this section shall be only upon notice to the parties interested." Section 12h in part reads: "Every contract or agreement of an employer, the purpose of which is to indemnify him from loss or damage on account of the injury of an employee by accidental means or on account of the negligence of such employer or his officer, agent or servant, shall be absolutely void unless it also covers liability for the payment of the compensation provided for by this law," and section 14, "No agreement by any employee to waive his rights to compensation under this law shall be valid."

Part 2 of said Compensation Law, being article 8307, R. C. S. 1925, and its several sections, provides for the Industrial Accident Board, the course of procedure to be had before same in hearing and passing upon applications of injured employees for compensation.

Part 3, being article 8308, R. C. S. 1925, creates the Texas Employers' Insurance Association, for the appointment by the Governor of the first board of directors, consisting of twelve members, and for the selection thereafter of such board by the subscribers, and provides that any employer of labor in this state may become a subscriber of the Texas Employers' Insurance Association, except as provided in section 2, part 1, of said law, and for the issuance of indemnity insurance by the association, and the manner in which its business shall be conducted.

Part 4, being article 8309, R. C. S. 1925, and its subdivisions, deals with definitions and general provisions, and, among other things, includes the following provision: Sec. 2, "Any insurance company, which term shall include mutual and reciprocal companies, lawfully transacting a liability or accident business in this State shall have the same right to insure the liability and pay the compensation provided for in part 1 of this law, and when such company issues a policy conditioned to pay such compensation, the holder of such policy shall be regarded as a subscriber so far as applicable under this law, and when such company insures such payment of compensation it shall be subject to the provisions of parts 1, 2 and 4 and of sections 10, 17, 18a and 21 of part 3 of this law. Such company may

have and exercise all of the rights and powers conferred by this law on the association created hereby, but such rights and powers shall not be exercised by a mutual or reciprocal organization unless such organization has at least fifty subscribers who have not less than 2,000 employees."

We have been unable to find any provision in the Workmen's Compensation Law that makes the right of an injured employee to receive compensation to depend upon naming the particular provision of the schedule that determines the amount of compensation he is entitled to on account of the injuries received. That is a matter for the court and not for the jury. The jury finds the facts upon which the injured employee is entitled to compensation, but cannot fix the amount—that duty rests alone with the trial judge, to be performed after the facts have been found by the jury that entitles the injured employee to compensation. It is not necessary under the law that one claiming compensation under its provisions shall, in order to recover, name the provision of the schedule by which the amount of his compensation must be measured, or the amount of compensation claimed by him. This holding, without reference to the plain, clear, and specific purport of the Workmen's Compensation Law, may alone be confidently predicated upon the proposition that the different rules prescribed in the Workmen's Compensation Act for measuring compensation to be paid an injured employee according to the nature and extent of the injuries received are similar in nature and purpose to rules for measuring damages in common law actions. It is not required that these rules should be pleaded, and, if pleaded incorrectly, the court will disregard the same and apply to the particular case the correct rule for measuring such damages. I. & G. N. R. Co. v. Gordon, 72 Tex. 44, 11 S. W. 1033; Harmon v. Callahan (Tex. Civ. App.) 35 S. W. 705; Ara v. Rutland (Tex. Civ. App.) 172 S. W. 993; St. Louis S. W. Ry. Co. of Tex. v. Jenkins (Tex. Civ. App.) 89 S. W. 1106; Black v. Nabarrette (Tex. Civ. App.) 281 S. W. 1087, 1089.

Therefore it was not incumbent upon appellee to present as a basis for his claim for compensation any other than the allegations herein quoted from his pleadings. A contrary holding would, in our judgment, be diametrically opposed to accomplishing the purpose for which the law was enacted, viz., to secure compensation under its provisions to an injured employee commensurate with the nature and extent of and the result produced by the injuries sustained, as determined by the verdict of the jury, and by the proper measure of compensation being applied thereto by the court trying the case.

Appellee, by his prayer for compensation for 150 weeks at $20 per week from August

8, 1927, based upon allegations that "said injuries have rendered defendant totally and permanently disabled in the use of his right hand," and that he "will always be powerless to ever again use said hand in plying the tools of his trade or in performing any kind of physical labor," did not make an election of any one of the provisions of the schedule contained in article 8306, supra, that would preclude him from being awarded by the trial court the amount of compensation he was entitled to on account of his injuries. His suit was for compensation under the Workmen's Compensation Act, with the relief he was entitled to gauged by one of the provisions of said schedule. This is clear from the following provisions of said article 8306, § 3, viz.: "The employees of a subscriber * * * shall look for compensation solely to the association, as the same is hereinafter provided for." Section 12h, Id.: "Every contract or agreement of an employer, the purpose of which is to indemnify him from loss or damage on account of the injury of an employee by accidental means or on account of the negligence of such employer or his officer, agent or servant, shall be absolutely void unless it also covers liability for the payment of the compensation provided for by this law." Section 14, Id.: "No agreement by any employee to waive his rights to compensation under this law shall be valid."

Furthermore, the Legislature in amending section 6 of article 8306, part 1, title 130 R. C. S. 1925, expressed the legislative intent in reference to the Workmen's Compensation Law to be "that this law is designed to properly care for those injured in the industries of this State." Acts 1927, 40th Legislature, p. 84, c. 60, § 2.

We are not unmindful of the decisions that in a measure hold contrary to the interpretation we have placed upon the Workmen's Compensation statute, viz.: Western Indemnity Co. v. Corder (Tex. Civ. App.) 249 S. W. 316; Travelers' Ins. Co. v. Richmond (Tex. Com. App.) 291 S. W. 1085; Cone v. Texas Emp. Ins. Ass'n (Tex. Civ. App.) 251 S. W. 262; Travelers' Ins. Co. v. Washington (Tex. Civ. App.) 5 S.W.(2d) 783; Ellis v. U. S. Fid. & Guar. Co. (Tex. Civ. App.) 6 S.W.(2d) 811; Lumbermen's Recip. Ass'n v. Ryan (Tex. Civ. App.) 299 S. W. 701.

These decisions we are unable to follow on account of same being directly opposed to our interpretation of that statute as herein reflected. The following cases in a measure hold contrary to the above-cited cases, and in a measure support the construction placed by this court upon the statutory provisions under review, namely: Lumbermen's Recip. Ass'n v. Pollard (Tex. Civ. App.) 295 S. W. 279 affirmed by Commission of Appeals, 10 S.W.(2d) 982; Maledon v. Texas Emp. Ins. Ass'n (Tex. Civ. App.) 11 S.W.(2d) 627, 629 (writ of error granted); Petroleum Casualty Co. v. Seale (Tex. Com. App.) 13 S.W.(2d) 364; Texas Emp. Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112 (writ of error refused); Travelers' Ins. Ass'n v. Peters (Tex. Com. App.) 14 S.W.(2d) 1007.

Not finding any error in the judgment of the court below, its judgment is in all things affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

The following provisions of article 8306, § 12, R. C. S. 1925, viz.: "In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same compensation as, the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases. * * * For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent. of the average weekly wages of such employee, but not less than $7.00 per week nor exceeding $20.00 per week, for the respective periods stated herein, to wit *.* * for the loss of a hand, sixty per cent. of the average weekly wage during one hundred and fifty weeks," we hold, apply to and control the amount of compensation appellee was entitled to, and under the terms of which the trial court should have adjudged compensation to appellee. Therefore it was error to award him compensation for 15 weeks at $20 per week, on account of temporary total loss of the use of his hand, as a part of the compensation adjudged to him. This because the following provision of said section 12, viz.: "The compensation in and by said schedule provided shall be in lieu of all other compensation," restricted his compensation to 60 per cent. of his average weekly wage, viz. $15, for 150 weeks, or a total sum of $2,250. The jury found that appellee sustained permanent partial loss of the use of his right hand to the extent of 75 per cent., which was but in effect a finding that by said injury to his hand appellee was permanently partially incapacitated. This holding, we think, but a logical deduction asserted automatically by the following provision of section 12, supra: "That the permanent loss of the use of the member is equivalent to and shall draw the same compensation as the loss of that member"; it appearing therefrom that the terms "permanent partial incapacity" and "permanent partial loss of the use of a member," are interchangeably used and are convertible terms, in that, for permanent partial incapacity to exist, it would not be necessary for one to suffer the permanent total loss of the use of a member either by an injury thereto or a complete sev-

erance thereof; for instance, in so far as its usefulness as designed by its construction for manipulation etc., a severed hand is no more a loss of that member than a permanent total loss of its use would be, and in neither event would there exist a mere condition of permanent partial incapacity. It is the condition created by an injury, viz. a permanent partial incapacity, that shall be considered equivalent to the permanent loss of the use of the member and thereby draw the same compensation as the loss of that member. The loss of a hand would produce a case of permanent total incapacity and not one of total partial incapacity, and likewise a case of total partial incapacity does not include a total permanent loss of the use of the member either by its severance or by an injury thereto. A member, the use of which has been permanently and totally destroyed other than by severance, would be a permanent total loss of the use thereof, and not a case of permanent partial incapacity.

It is true the word "partial" is not included in the expression, "It shall be considered that the permanent loss of the use of a member is equivalent to"; however, that language is not to be interpreted so as to give same the effect as if it in fact read "that the permanent total loss of the use," when to do so would be to hold that the word "partial" used in the opening sentence, viz. "In all cases of permanent partial incapacity it shall be considered," had reference to and only included cases of permanent *total* incapacity. It is the permanent loss of the use of a member through an injury producing permanent partial incapacity that said section provides "shall draw the same compensation as the loss of that member." While incapacity is only required to be partial, same must be permanent; therefore, to withhold from the word "partial" its commonly accepted meaning would prevent said provision of the Workmen's Compensation Act, in which said word "partial" is used, from accomplishing the purpose for which it was undoubtedly included in said act, viz. to take care of all other cases of permanent partial incapacity not included in any other provision of said act—cases of permanent partial incapacity produced by injury to a member resulting, not in the loss of that member, but a permanent partial loss of its use, for it is only where an injury produces permanent partial loss of the use of a member that permanent partial incapacity can exist.

The word "incapacity" is defined in Webster's New International Dictionary (Ed. 1927) in part as follows: "State of being incapacitated, want of capacity, lack of physical power, of natural qualification"; and the word "partial" is defined by the same authority to mean, among other things, "of, pertaining to or affecting a part only; not general or universal, as a partial eclipse of the moon." We therefore hold the meaning of "partial incapacity," as used in said statute, to be a lack of physical power in part only, or physical inability in part only of an injured member.

The construction we place upon the quoted provisions of said section 12, we think, is in harmony with the purpose for which said statute was enacted, and but a proper recognition of the value of the language employed to provide prompt, speedy, and effectual means by which an employee, injured in any one of the industries of the state, shall be awarded compensation as fixed within the terms of said act. Employers' Ins. Ass'n v. Dewey Adcock, 27 S.W.(2d) 363, decided March 22, 1930, and cases cited.

We hold, therefore, that compensation for the permanent partial loss of the use of a member is provided for by the quoted provisions of said section 12, and is fixed for a period of 150 weeks at 60 per cent. of the average weekly wage of an employee so injured. Appellant's motion for rehearing is granted to the extent of reforming the judgment so as to award appellee compensation at $15 per week for 150 weeks, with costs of appeal adjudged against appellee, and, as so reformed, the judgment of the trial court is affirmed, and appellant's motion in all other respects overruled.

Overruled.