## TRADERS & GENERAL INS. CO. v. MAXWELL.

### No. 5649.

Court of Civil Appeals of Texas. Texarkana.

July 25, 1940.

Rehearing Denied Aug. 1, 1940.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, and Caves, Waldrop & Shaw, of Henderson, for plaintiff in error.

White & Yarborough, of Dallas, and H. H. Wellborn, of Henderson, for defendant in error.

JOHNSON, Chief Justice.

This appeal by Traders & General Insurance Company is from a judgment awarding John C. V. Maxwell, an oil field worker, compensation for permanent total loss of the use of his right leg, sustained February 13, 1937, while working as an employee of Adams Brothers Drilling Company, Inc., of which Traders & General Insurance Company was the compensation insurance carrier. John C. V. Maxwell will be referred to as appellee and Traders & General Insurance Company as appellant.

Special issue No. 4 submitted to the jury reads: "Do you find from a preponderance of the evidence that plaintiff sustained total incapacity of his leg as a natural result of the accidental injuries, if any, sustained by him on or about February 13, 1937? Answer Yes or No." (The jury answered "Yes.") Referable to the question the trial court instructed the jury as follows: "You are instructed that the phrase *'Total incapacity of his leg'* as used in the Court's charge means total loss of use of the leg; it does not imply an absolute disability to perform any kind of labor, but such incapacity of the leg that it disqualified a person from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment requiring the use of said leg, is ordinarily regarded as total incapacity of the leg."

The defendant objected to the court's definition of the phrase "total incapacity of his leg" as used in the charge, which objections read as follows: "Said defendant objects and excepts to the court's main charge particularly the definition of the term 'total incapacity' for the reason that such definition is improper in cases of the kind established under the evidence here and submitted to the jury, in that the case here both under the evidence and the charge involves merely a question of specific injury and not one of general disability, and for the further reason that such definition does not take into consideration that part of the law which provides that such workman is to pursue and retain any employment of any kind, and as here defined has the effect of advising the jury that they shall consider only that character of employment theretofore performed by him prior to the injury, and to that extent is upon the weight of the evidence, and in that connection the said defendant requests the court to prepare and submit to the jury in connection with his charge an amended and corrected definition of such term including therein those matters called here to the attention of the court." And in addition thereto further objected to such definition as follows: "Said defendant objects and excepts to the court's main charge and particularly and in addition to the definition of the term 'total incapacity of his leg' for the reason that same is not a proper definition in that the definition given involves a question of the extent of the ability of the plaintiff to pursue and retain employment and to perform the usual tasks of a workman, when under all the evidence herein and under the charge of the court and special issues submitted the question is only one of a specific injury and therefore should be based only upon the extent of percentage of disability to that particular member."

Special issue No. 7 submitted to the jury reads: "Do you find from a preponderance of the evidence that plaintiff sustained partial incapacity of his leg as a natural result of the accidental injuries, if any, received by him on or about February 13, 1937? Answer Yes or No." (The jury answered "No."). Referable to special issue No. 7 the court instructed the jury as follows: "You are instructed that by the term *'Partial incapacity of his leg'* as used in the court's charge is meant the extent that the injury to his leg in fact destroyes or impairs the ability of the leg to be as efficient or competent for performing the usual tasks of a workman after the injury as it was before; any degree of incapacity in the leg less than total."

The defendant objected to the court's definition of the phrase "partial incapacity of his leg", which objections read as follows: "Said defendant objects and excepts to the court's main charge particularly the definition of the term 'partial incapacity' for the reason that such definition is improper in cases of the kind established under the evidence here and submitted to the jury, in that the case here both under the evidence and the charge involves merely a question of specific injury and not one of general disability, and for the further reason that such definition does not take into consideration that part of the law which provides that such workman is to pursue and retain any employment of any kind, and as here defined has the effect of advising the jury that they shall consider only that char-

acter of employment heretofore performed by him prior to the injury, and to that extent is upon the weight of the evidence, and in that connection the said defendant requests the court to prepare and submit to the jury in connection with his charge an amended and corrected definition of such term including therein those matters called here to the attention of the court." And in addition thereto further objected to such definition as follows: "Said defendant objects and excepts to the court's main charge and particularly and in addition to the definition of the term 'partial incapacity of his leg,' for the reason that same is not a proper definition in that the definition given involves a question of the extent of the ability of the plaintiff to pursue and retain employment and to perform the usual tasks of a workman, when under all the evidence herein and under the charge of the court and special issues submitted the question is only one of a specific injury and therefore should be based only upon the extent or percentage of disability to that particular member."

Appellant's first four propositions assert that the trial court erred in overruling its above-quoted objections to the court's definition of the phrase "total incapacity of his leg" and of the phrase "partial incapacity of his leg" as used in the court's charge. The complaint now urged against said definitions is that they include or take into consideration the loss of the use of the leg for "purposes of work"; that (R.S. Article 8306, Sec. 12) in providing compensation for the loss of the use of a specific member the *character of the use* (for the loss of which compensation was intended) does not include and is not referable to its use for purposes of work. Expressed in the language of appellant, the contention is that "the compensation provided for a specific injury has to do with and is controlled by the loss or percentage of the loss of such member as an integral part of the body, or the loss of physical or bodily function." The phrase "loss of such member as an integral part of the body, or the loss of physical or bodily function", as used by appellant, is not explained further than that it is not intended to include loss of the use of the member for purposes of work. It is claimed that the theory advanced by appellant is supported by the decision in Fidelity Union Casualty Co. *v.* Munday, Tex.Com.App., 44 S.W.2d. 926,

928, in which case it is held that to recover compensation for the loss or the loss of the use of a specific member, it is not necessary to show, in pleading or proof, that incapacity for work in any degree has in fact resulted therefrom. The decision in the Munday case is based upon Section 12 of Article 8306, which provides compensation for the loss of certain enumerated members of the body, and further provides: "In the foregoing enumerated cases of permanent, *partial incapacity,* it shall be considered that the permanent loss of the *use* of a member shall be equivalent to and draw the same compensation as the loss of that member." (Italics ours.) The statute thus denominates the loss of such member, or the loss of its *use,* as partial incapacity. So, in providing compensation therefor the law conclusively presumes that in the loss or the loss of the use of such a member the workman has sustained partial incapacity, and for that reason it is held in cases of such specific injuries that it is not necessary to show that incapacity has in fact resulted therefrom. That the character of use of such a member, for the loss of which use the law intends to provide compensation, includes its use for purposes of work is further made clear by Judge Harvey in decision of the third point decided in the Munday case, wherein it is held that for temporary total loss of the use of the hand, the law contemplates payment of the same compensation, during existence of such incapacity, not exceeding 150 weeks, as in case of permanent loss of the hand. And that such is the proper construction to be placed upon said Section 12 of Article 8306, even though as a result of such construction a temporary total loss of the use of a hand for as much as 150 weeks would call for the same total amount of compensation as if the loss were permanent, because "the degree of incapacity for work, which results exclusively from a temporary, total loss of the use of a hand, is, for the time being, the same as if such loss were permanent. In either case, the resulting incapacity for work is only partial." We further note from the statement of the Munday case made by the Court of Civil Appeals, 26 S.W.2d 676, 677, the trial court in submitting the issue, No. 3, inquiring as to whether Munday had sustained partial loss of the use of his right hand, instructed the jury as follows: "You are instructed that the

term 'partial loss of the use of his right hand,' as used in special issue No. 3, is meant the extent that the injury to his hand in fact destroys or impairs the ability of the hand to be as efficient or competent *for work* after the injury as it was before." (Italics ours.) Upon findings of the jury guided by the above-quoted definition, the trial court entered judgment awarding Munday compensation for temporary total loss of the use of his right hand for fifteen weeks and thereafter for permanent partial loss of the use of his right hand for a period of 125 weeks. The Court of Civil Appeals reformed the judgment of the trial court. The Commission of Appeals reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court. Thus it appears that the Commission of Appeals has, contrary to the contention of appellant, in language used in its opinion and by its decision affirming the judgment of the trial court in the Munday case, impliedly affirmed that the character of use of a specific member for the loss of which use compensation is awarded includes the use of such member for purposes of work. Definitions similar to that used by the trial court in the Munday case and by the trial court in the present case have been held substantially correct. United States Fidelity & Guaranty Co. v. Brandon, Tex.Civ. App., 31 S.W.2d 846; Traders & General Ins. Co. v. Porter, Tex.Civ.App., 124 S. W.2d 900, writ refused; Texas Employers Ins. Ass'n v. Olesky, Tex.Civ.App., 288 S.W. 244; Texas Employers Ins. Ass'n v. Craig, Tex.Civ.App., 284 S.W. 336.

█ Appellant's propositions, 5, 6, 7, 8 and 9 charge that the findings of the jury that appellee sustained permanent total loss of the use of his leg are without support in the evidence. The contention is not sustained. Evidence supporting the findings of the jury is found in the testimony of appellee and that of his witness Dr. Irvin Pope, Jr. Appellee, Maxwell, testified in substance that he had been engaged in the oil field work practically all his life; that he only reached the 5th grade in school and was not qualified in education or training to do any kind of work other than manual labor; that on February 13, 1937, he was working for Adams Brothers Drilling Company, Inc., as a derrick man, which was "rough-neck" work on the drilling rig; that while assisting in unstopping a gas line, between the main line and the boiler, an explosion occurred in the joint he was holding, throwing the pipe against him, knocking him backwards, breaking his right leg and bursting his kneecap, rendering him unconscious; that after he regained consciousness he was carried to Dr. Tubbs' office at Arp; and later removed to Dr. Shirley's office at Tyler; and from there to Dr. Driver's office at Dallas; that his leg was put in a cast; that he stayed in Baylor Hospital about four weeks, confined to his bed; then was carried to his home, where he remained in bed about three weeks and was then able to get up and down about one week, was taken to Carroll-Driver Hospital for further treatment, and the cast was removed; that he went back to Dallas for treatment three or four times; that a steel brace was put on his leg; that about the last of July or first of August, 1937, he went back to work for Adams Brothers Drilling Company; that Mr. Adams is his brother-in-law and that Mr. Adams gave him a job of firing a boiler; which task he performs while sitting in a chair fixed for him for that purpose, by turning on and off the fuel oil that heats the boiler; that the work causes him to suffer pain in his leg from his knee to his hip and back; that to stand or put weight on his leg causes pain and causes his knee to swell; that he bathes it in liniment and wraps it in hot towels; that he can not bend his right leg like his left one; that in walking over ground that has rocks, timber or something like that, he has to pick his way because his leg is not strong enough to hold him up; that his knee is wobbly and has to set his foot down flat; that splinters of bone have been working out of his knee ever since the accident; that he has tried to get oil field work other than firing the boiler but could not pass the required physical examination; that he could have gotten a job from H. L. Hunt but the doctor would not "pass him."

Dr. Irvin Pope, Jr., testified in substance that he first examined appellee, Maxwell, in April, 1938; that he had also examined him just before the trial in October, 1938; that he had supervised the taking of X-ray pictures of appellee's left knee and of his injured right knee, which pictures were exhibited on trial and as to which Dr. Pope testified: "You will notice the difference in appearance of this and this side, this is the patella, this (referring to the injured knee) has been badly mashed and

shattered and parts of the bone have been absorbed; it has a moth-eaten appearance, this has been destroyed, you will notice the patella, the separation, the clear space between this large bone in the good knee and how closely it fits down, in addition to that there is a little fracture line in the large bone of the lower leg, the fracture extends from here up to and through the knee joint." He further testified in substance that the fracture is about 3½ inches; that it is not back in good position, the fact that the fracture extends into the joint cavity proper, together with the injury to the patella, the synovial fluid having been lost, explains why the kneecap has been pushed down close to the bone and is resting on the bone; by moving it with your hand you can feel the bone grating; the synovial fluid which lubricates the joint has been lost; the synovial sac injured to such extent that it can not form more fluid; that the injury to the bone extends above and below the knee joint; that the injury has healed to all the extent that it will heal; that in April, 1938 witness also made a general examination of Maxwell and found that, except as to his right leg, the functions of his body were normal; that there is a limitation of motion in his knee joint; that he can not bend it as far back, or straighten it out, without pain, and that when you manipulate it with the hand you can feel the bones working together; it is witness' opinion that it will hurt and pain Maxwell very much to exert himself or place weight upon the leg and might get an inflamed condition that would cause a swollen joint, and would have the effect of further weakening the knee; that as to use of the leg for purposes of work, witness is of the opinion that the use of the leg is totally destroyed, and that there is no chance for it to improve.

The fact that the claimant may perform work not requiring use of his leg, such as firing a boiler in the manner here testified to, and that he can walk without use of cane, crutch or brace, when to do so causes him pain, swelling, inflammation, and further weakening of the knee, of which condition it is testified there is no chance of improvement, does not, as contended, show as a matter of law that he has not suffered permanent total loss of the use of the leg within the meaning of Article 8306, Sec. 12, R.S. Ætna Life Ins. Co. v. Bulgier, Tex.Civ.App., 19 S.W.2d 821; Dohman v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 285 S.W. 848; Fidelity Union Casualty Co. v. Munday, Tex.Civ.App., 26 S.W.2d 676; Texas Emp. Ins. Ass'n v. Moreno, Tex.Com.App., 277 S.W. 84; Texas Emp. Ins. Ass'n v. Craig, Tex.Civ.App., 284 S.W. 336; Texas Indemnity Ins. Co. v. Carson, Tex.Civ.App., 21 S.W.2d 691.

Under its propositions 10, 11 and 12, appellant complains of the action of the trial court in overruling its objections to special issue No. 7 (we have heretofore quoted special issue No. 7). The claimant pleaded that he had sustained total incapacity of his leg, and, as an alternative plea, that he had sustained a partial incapacity of his leg. There was testimony supporting each of said pleas. The trial court submitted special issue No. 4 (quoted above), inquiring whether the jury found from a preponderance of the evidence that claimant had sustained total incapacity of his leg; and also (unconditionally) submitted special issue No. 7, inquiring whether the jury found from a preponderance of the evidence that the claimant had sustained partial incapacity of his leg. The jury answered special issue No. 4 in the affirmative, and No. 7 in the negative. Appellant's objections to special issue No. 7 filed in the trial court read as follows: "Said defendant objects and excepts to the court's main charge and particularly Special Issue No. 7, for each and all of the reasons heretofore assigned to the submission of Special Issue No. 1, and same are here now adopted and made a part hereof as though fully written herein, and for the further and additional reason that said issue as framed is multifarious and duplicitous in that it involves two questions in one, in that it involves a question of incapacity, and also a question of partial incapacity." The objections to special issue No. 1 referred to and made a part of the objections to special issue No. 7 read as follows: "Said defendant objects and excepts to the court's main charge, particularly Special Issue No. 1, (Do you find from a preponderance of the evidence that plaintiff, John C. V. Maxwell, sustained accidental personal injuries on or about February 13, A. D. 1937? Answer 'Yes' or 'No'. Answer: 'Yes') for the reason that there is no evidence of any kind or character, and particularly no evidence of sufficient probative value, upon which to base the submission of said issue; and for the further reason there are not sufficient pleadings upon which to base the submission of such issue, and not suf-

ficient evidence upon which if an answer was made thereto to base the entry of a judgment thereon; and for the further reason that said issue as framed is upon the weight of the evidence in that and for the additional reason that as framed it has the effect of advising the jury that certain matters recited therein are in the opinion of the court true, and for the further reason that said issue as framed and based upon a finding from the jury from a preponderance of the evidence together with the instructions to the jury on how to answer such issue and particularly in this case as to answer same 'yes' or 'no' is misleading and confusing to the minds of the jury and has the effect of placing the burden of proof upon the defendant to establish the negative of said issue by a preponderance of the evidence, and has the further effect of placing the burden of proof upon the defendant to establish its contention with reference thereto by a preponderance of the evidence, and for the further reason that said issue as framed clearly places the burden of proof upon the defendant."

■■ Appellant now complains of special issue No. 7, in its 10th proposition, because "said special issue erroneously placed the burden of proof upon the defendant insurance company to prove that the claimant, Maxwell, had received a partial incapacity of his leg as contradistinguished from claimant's contention to the effect that he had suffered permanent total disability to such member because the burden of proof on said issue No. 7 was upon the plaintiff and not upon the defendant"; and in its 11th proposition appellant complains of special issue No. 7 because "such issue placed the burden of proof upon the insurance company to establish that claimant had sustained a partial incapacity of his leg, whereas the burden of proof upon such issue under the pleadings and evidence, was upon the claimant and not upon the defendant insurance company"; and in its 12th proposition appellant complains of special issue No. 7 because, "the form of such issue placed the burden of proof on it to establish partial incapacity to said member contrary to the express terms of the Workman's Compensation Act." Expressed in other words, the objection now raised (though not so expressed or requested in the trial court) against special issue No. 7 is because it was not submitted in the negative, so as to read: "Do you find from a preponderance of the evidence that the plaintiff has *not* sustained a partial incapacity of his leg as a natural result of the accidental injury, if any, received by him on or about February 13, 1937?" We overrule the proposition for two reasons: (1) Because the objections filed in the lower court did not point out to the trial judge the objection now raised. San Antonio Public Service Co. v. Murray, 127 Tex. 77, 90 S.W.2d 830; Isbel v. Lennox, 116 Tex. 522, 295 S.W. 920; Perkins v. Nevill, Tex.Com.App., 58 S.W.2d 50; Gulf, T. & W. Ry. v. Dickey, 108 Tex. 126, 187 S.W. 184; Walker v. Haley, 110 Tex. 50, 214 S.W. 295; Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474; Chisos Mining Co. v. Llanez, Tex.Civ.App., 298 S.W. 642; Gulf, C. & S. F. Ry. v. Hines, Tex.Civ.App., 4 S.W.2d 641; Norwich Union Indemnity Co. v. Wilson, Tex. Civ.App., 17 S.W.2d 68; Chase Bag Co. v. Longoria, Tex.Civ.App., 45 S.W.2d 242; Ft. Worth & D. C. Ry. v. Rowe, Tex. Civ.App., 69 S.W.2d 169; McWilliams v. Hailey, Tex.Civ.App., 95 S.W.2d 985. (2) Because the objection now raised against special issue No. 7 has been expressly overruled in Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314.

■ Propositions 13, 14 and 15 assert that reversible error was committed by counsel for appellee by reading to the jury paragraph 4 of appellant's answer and thereupon stating to the jury that said answer had been sworn to by counsel for appellant, when in fact the affidavit to the answer referred only to paragraph 3 thereof; and that such action of the attorney for appellee was reversible error notwithstanding the fact that the trial court at the time, and in accordance with request of counsel for appellant, withdrew the statement from the jury and instructed them not to consider same. Paragraph 4 of appellant's answer in substance alleged that appellant had theretofore made payments to appellee totaling $400 under misrepresentation of fact on the part of appellee as to his injury, and for which appellant was entitled to a credit and judgment over against appellee. In the course of his argument to the jury counsel for appellee stated that he wanted to read a portion of defendant's answer, no objection was offered, and he proceeded to read paragraph 4, whereupon attorney for defendant stated that he objected to a reading

of a portion of the paragraph unless all of it was read, and the attorney continued reading the paragraph and concluded same with the statement: "That is sworn to, before me, the undersigned authority, on this day personally appeared John T. Gano." Then Mr. Gano, attorney for appellant, stated: "Object to the misstatement of counsel that (the affidavit) applies to paragraph 3. He hasn't read all of the paragraph (No. 4)." Then Mr. Yarborough, attorney for appellee, stated to Mr. Gano: "You take it and read it, what I did not." Mr. Gano: "I will be glad to." And then Mr. Gano read all of paragraph 4 to the jury as well as the affidavit attached to the answer, which affidavit states: "That the matters set forth in paragraph 3 are, to the best of his knowledge, information and belief, true." Whereupon further remarks, addressed to each other, passed between the attorneys, wherein Mr. Gano was requested to read paragraph 3 which he correctly refused to do, because it contained denial of jurisdictional facts. (The matters set forth in paragraph 3 were not read or quoted to the jury by either party.) Mr. Gano then stated: "I ask the court to instruct the jury not to consider the argument of counsel that I swore to paragraph 4. I did not." Whereupon the court did so instruct the jury. We find nothing alleged in paragraph 4 that an affidavit to which would have been prejudicial to defendant. Though incorrect and claimed to have been inadvertently made, the statement of the attorney, to the effect that paragraph 4 had been sworn to by attorney for defendant, could not reasonably be calculated to have had any prejudicial effect upon the mind of the jury. Certainly beyond any question of a doubt, the statement was not of such inflammatory nature but that its effect, if any, against defendant was withdrawn by the reading of the affidavit which itself plainly shows that it did not refer to paragraph 4, and by the action of the court in so instructing the jury. Davis v. Hill, Tex.Com.App., 298 S.W. 526; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

Appellant's 16th and 17th propositions complain of the action of the trial court in permitting appellee to testify on direct examination that his kneecap was broken into "31" pieces. It appears from the record that on cross examination ap-

pellee was further questioned about the same matter by attorney for appellant as follows.

"Q. The bone itself was not protruding? A. Yes, sir, the flesh was knocked back, I could see part of the kneecap that was left.

"Q. You testified on direct examination the kneecap was broken into 31 pieces, you don't know that yourself, the doctor told you that? A. Yes, sir.

"Q. That was based on what somebody told you? A. Yes, sir.

"Mr. Gano: We move to strike that part of the testimony.

"The Court: Sustained, and instruct the jury not to consider that part of this witness' testimony as to the number of bones."

We think that all doubt as to error in permitting appellee to testify that his kneecap was broken into "31" pieces was unquestionably withdrawn by the action of the trial court in sustaining appellant's motion to strike the testimony, upon its being developed that same was hearsay, and the charge of the court instructing the jury not to consider same. Davis v. Hill, supra; Ramirez v. Acker, supra.

Appellant's 18th and 19th propositions complain of the action of the trial court in overruling its objections to the court's instructions to the jury following special issue No. 5 reading as follows: "Do you find from a preponderance of the evidence that the total incapacity of his leg, if any, sustained by plaintiff on or about February 13, 1937, is permanent? Answer 'yes' or 'no'." Answer: "Yes." It is contended that the instructions of the court directing the jury to answer the question "Yes" or "No" was "misleading and confusing to the jury and in effect advised the jury to answer said question 'Yes' or 'No' without regard to the previous instruction of the court to answer from a preponderance of the evidence." The contention is overruled. Traders & General Ins. Co. v. Jenkins, Tex.Com.App., 141 S.W.2d 312 (not yet reported [in State report]); Stevenson v. Wilson, Tex.Civ. App., 130 S.W.2d 317; Federal Underwriters Exchange v. Bullard, Tex.Civ.App., 128 S.W.2d 126; Willis v. Smith, Tex. Civ.App., 120 S.W.2d 899; Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W.2d 210; Hickman v. Sullivan, Tex.Civ.App.,

128 S.W.2d 457; Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W. 2d 314.

The judgment of the trial court is affirmed.