FEDERAL UNDERWRITERS EXCHANGE
v. STRICKLIN.
No. 4066.

Court of Civil Appeals of Texas. El Paso.
April 17, 1941.

Rehearing Denied May 15, 1941.

Lightfoot, Robertson & Gano, of Fort Worth (John T. Gano, of Fort Worth, of counsel), for appellant.

George W. McHam and Bailey & Shaeffer, all of Dallas, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the District Court of Ward County rendered on the verdict of a jury.

The parties here will be designated as they were in the trial court.

The plaintiff, Ford Stricklin, sued the Federal Underwriters Exchange, as defendant, to recover compensation for an injury claimed to have been sustained by him in Ward County on or about the 19th day of September, 1939.

The case was tried to a jury and submitted on special issues. The issues were answered by the jury favorable to the plaintiff, and the court rendered its judgment in favor of the plaintiff against the defendant for compensation in the sum of $13.29 per week for three hundred thirty-three and three-sevenths weeks from and after September 20, 1939, with interest at six per cent, less certain payments made by the defendant to plaintiff prior to the trial.

The plaintiff alleged, in substance, that he was engaged by B. H. Willis, Contractor, on September 19, 1939, and had worked for Willis for approximately four years prior thereto as a trucker and teamster. On the occasion of his injury he was engaged with others in moving an oil well derrick and rig for the Gulf Production Company in Ward County. The evidence discloses that his employer, Willis, was engaged in moving said derrick and rig and in said work used both trucks and teams. The plaintiff was driving a team, and his particular work was to move large oak boards, weighing in excess of three hundred pounds. The boards were laid as a track over which the derrick was skidded. The derrick was moved by the use of a wince on a parked truck. The plaintiff dragged the boards ahead of the rig with a team. He alleged he undertook to lift one of these heavy boards, and in doing so injured the muscles, ligaments and sacroiliac joint of his back, and that such injury resulted in a serious and permanent total disability.

The defendant answered with a general demurrer, general denial, and specially denied that it had received any legal, valid, competent and sufficient notice of injury and claim for compensation, and that no proper award by the Industrial Accident Board had been had and appeal therefrom. It further specially alleged that it had prior thereto paid to the plaintiff certain sums of money under a mistake of fact, and under such circumstances that it was not bound by such payments and claimed it was entitled to recover the same back from the plaintiff.

The defendant has nine assignments of error, but has briefed no propositions under the second assignment. We will dispose of the assignments here in the order presented.

Its first proposition briefed under its first assignment of error is a complaint against the manner of submitting special issue number ten, which is as follows: "Do you find from a preponderance of the evidence that plaintiff has sustained partial incapacity for any length of time as a natural

result of said accidental personal injury, if any, on or about September 19th, 1939? Answer 'yes' or 'no.' "

The substance of its complaint is that this issue as submitted, when taken in connection with the definition of the term "preponderance of the evidence," improperly and wrongfully places the burden of proof upon the defendant.

This assignment and proposition and the contention of the defendant have been determined definitely by the Supreme Court against it, and expressly overruled in Wright v. Traders & General Insurance Co., 132 Tex. 172, 123 S.W.2d 314, and Traders & General Insurance Co. v. Maxwell, Tex.Civ.App., 142 S.W.2d 685, wherein it is held if the issue of partial disability is raised by plaintiff as an alternative basis of recovery, or by the defendant as an affirmative ground of defense, an affirmative submission is sufficient, and same should not be submitted both affirmatively and negatively, and that such affirmative submission does not improperly place the burden of proof.

■ The second proposition and complaint of the defendant are in substance that the trial court erred in its definition of partial incapacity as submitted to the jury. The definition given by the court is as follows: "Where an employee by reason of an injury sustained in the course of his employment is only able to perform part of his regular labor, of a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or reduction in his earning power." The definition is an exact copy of that given in Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, and expressly approved by the Supreme Court in the same case, 132 Tex. 172, 123 S.W.2d 314, except the word "of" is used instead of "or." The approved definition is a general one, and will probably fit any case. It does not exclude other definitions.

■ The evidence in this case discloses the plaintiff is twenty-nine years of age, wholly uneducated and illiterate. He cannot read nor write and can barely sign his name. He has all of his life earned his living by the performance of hard manual labor. It cannot be supposed nor presumed he can qualify himself to earn his living other than by manual labor. The law does not require him to do so. The definition given does not limit his ability to perform the work of a teamster or truckman or the exact work he was engaged in as contended by the defendant. The definition as given at least embraces that class of work or labor plaintiff is fitted and qualified to do. We think it applicable under the facts of this case and substantially meets the definitions laid down. It is probably the better practice to use a definition of general application rather than one of specific application, but it is not essential. Traders & General Ins. Co. v. Belcher, Tex.Civ.App., 126 S.W.2d 35, writ denied.

■■ The substance of the defendant's objection to the definition was in effect that the definition is misleading and confusing to the jury, and limits the terms and language thereof to the question of plaintiff's incapacity to perform his regular labor, which is improper and leads the jury to believe that it means labor of the kind and character being performed by the plaintiff prior to the date of the injury, when such definition should include therein a proper explanation that the ability to perform labor would be any character of work which plaintiff was able to perform, regardless of whether it was heavy labor or whether it is of the character theretofore performed by him.

The error here we think is clerical. The defendant's objection we think too general to specifically direct the trial court's attention to the clerical error in the definition. The primary purpose of objections and exceptions to the charge of the court is to call to the attention of the court errors and mistakes, in order that the same may be corrected, and delays and expense of appeals avoided. Unless the party complaining does specifically and clearly point out the error complained of he cannot avail himself of it on appeal. Southern Underwriters v. Kelly, Tex.Civ.App., 110 S.W.2d 153; Traders & General Ins. Co. v. Maxwell, supra; Traders & General Ins. Co. v. Harper, Tex.Civ.App., 140 S.W.2d 593, and cases cited.

■ Defendant's fourth assignment of error and the third proposition briefed thereunder complain that the verdict and answer of the jury to special issue number two, finding that the accidental personal injury sustained by plaintiff on the 19th day of September, 1939, was sustained by him while working as an employee of B. H. Willis, Contractor, is so contrary to the weight and preponderance of the evidence

as to reflect passion and prejudice or some other improper motive of consideration, and that there was no evidence of sufficient probative force to support the finding.

Special issue No. 2 is as follows: "Do you find from a preponderance of the evidence that said accidental personal injury, if any, was sustained by the plaintiff while working as an employee for B. H. Willis, Contractor?" The answer was "Yes."

The contention of the defendant is in substance that the evidence in the case is to the effect that the plaintiff at the time of his injury was working for the Gulf Production Company and not B. H. Willis, Contractor.

As indicated in the previous statement of the case, the testimony shows that the plaintiff worked for B. H. Willis, Contractor, who is variously referred to in the statement of facts as B. H. Willis and Willis, as well as B. H. Willis, Contractor. He worked for B. H. Willis, Contractor, for some four years, he received his pay from Willis, he worked on trucks and around trucks, but mostly as a teamster or mule-skinner. At the time of plaintiff's injury, September 19, 1939, Willis had both trucks and teams on and around a job moving or skidding an oil well derrick for the Gulf Production Company. Two of the Gulf foremen who testified in the case referred to the plaintiff as working for Willis on the Gulf job.

The following questions were asked L. O. Newton, one of the foremen:

"Q. Do you have occasion to oversee or superintend the various work as done for the Gulf by the B. H. Willis Company? A. Yes, sir.

"Q. Acting in that capacity have you had occasion to see and observe Ford Stricklin at work—* * *. A. Well, he has worked on various jobs, and mostly heavy work as a teamster, picking up four inch pipe and lumber and casing and numerous jobs of that kind."

Another foreman for the Gulf, J. J. Williams, was asked this question:

"Q. Just tell the jury what you have done in your work and how it has been possible for you to observe him work. A. Well, Mr. Stricklin was employed down there as a skinner, and he was moving a lot of material in the way of pipe and hand fittings and things like that, and, of course, he was working for Willis, but he was

working for the Gulf and he was moving the stuff for the Gulf."

Plaintiff testified he worked for Willis. There is nothing in the evidence to indicate anything other than he was working for Willis while Willis was engaged on a job for the Gulf. We regard the evidence in this case as all being to that effect, and nothing to the contrary, and it was probably unnecessary to submit the issue. The issue, however, was submitted to the jury by the court and was answered in the affirmative. The evidence is sufficient to sustain the finding, and the assignment and proposition are overruled.

The fourth proposition submitted under assignments five, six, seven and eight is to the effect that there is no evidence to support the finding of the jury in response to issues four, five, eight and nine, and that the answers made by the jury are so contrary to the weight and preponderance of the evidence and so contradictory thereof as to reflect passion, prejudice or some other improper motive for consideration.

Special Issue No. 4: "Do you find from a preponderance of the evidence that plaintiff sustained total incapacity for any length of time as a natural result of said accidental personal injury, if any? Answer: Yes."

Issue No. 5: "On what date do you find from a preponderance of the evidence said total incapacity, if any, began? Answer: Sept. 19, 1939."

Issue No. 8: "How long do you find from a preponderance of the evidence that said total incapacity, if any, has continued in the past, if it has? Answer: 5–17–1940."

Issue No. 9: "How long do you find from a preponderance of the evidence that such total incapacity, if any, will continue in the future, if it will? Answer: 300 weeks."

The issues submitted are in all instances questions of fact for the jury. Of course, they must be supported by the evidence. The injury sustained by plaintiff is a back injury, hidden beneath the surface. In every particular, other than the misplacement of the sacroiliac joint, the injury is unlike a broken bone or open wound—it is impossible for one other than the injured to definitely determine that the injury has fully and completely healed. Men know from every day observations and experiences that a sprain or strain is many times

more serious, obstinate and stubborn than a break; that an old lame back, like some other human ailments and afflictions such as asthma, for example, rarely proves fatal, but goes through a long life an annoying impediment and disability. Juries in determining and answering such questions may resort to their common sense and experiences in aid of such proof as they have. The plaintiff testified in considerable detail with respect to the original injury and suffering. He was first taped by Dr. Craddock, a witness for the defendant, and in some fifteen days was discharged from the hospital. He later returned and after a time was discharged again by Dr. Craddock. His testimony is that he was unable to work and reported to Mr. Willis, his employer; Willis sent him to Dr. Hall at Big Springs. Dr. Hall administered an anesthetic for the purpose of his examination and then placed him in a cast and kept him in his hospital for twenty-two days. All the medical testimony is to the effect that plaintiff had a serious back strain to the muscles and ligaments and a misplacement of the sacroiliac joint. The degree of the misplacement varies. The misplacement, however, was the occasion of the cast by Dr. Hall. All the treatments given evidence the nature and character of the injury. Dr. Hall, on direct examination, testified that in his opinion the plaintiff should suffer no large degree of permanent disability. He likewise testified the permanent disability in his opinion is almost negligible. His testimony, though probably the least favorable of any of the medical testimony for the plaintiff, is, nevertheless, to the effect there is some degree of permanent disability. Dr. Hall further testified on cross-examination, as did other physicians, that it is difficult to determine to what extent an injury such as the plaintiff had, had recovered and just when recovery might become permanent; that one thus injured is more susceptible to a recurrence than one who has not had such an injury. This, too, is in accord with the common experience of men.

 It was the province and duty of the jury to determine the extent and duration of plaintiff's injury from the facts and circumstances in evidence before them. They did so. We are not concerned with just how nor why the jury fixed the particular duration of it. The question is, was there evidence to warrant and support the findings of the jury. We have reviewed the record and reached the conclusion the evidence is sufficient, and these assignments and the proposition are therefore overruled.

 The fifth proposition briefed under defendant's assignment number nine is to the effect the jury's answer to special issue number twenty-one is so contrary to the weight and preponderance of the evidence and in direct contradiction thereof as to show passion and prejudice, or some other improper motive and consideration that influenced the jury in arriving at its answer, and that there is no evidence of sufficient probative value to support the finding.

Issue twenty-one is as follows: "Do you find from a preponderance of the evidence that the defendant, Federal Underwriters Exchange, had and carried a policy of Workmen's Compensation Insurance covering the employees of B. H. Willis, Contractor, at the time and on the occasion of the injury, if any, to Ford Stricklin on or about September 19th, 1939?" The answer is "Yes."

The evidence on this issue was the notice that the employer had become a subscriber. This notice was evidently given by filling in a blank form provided for that purpose. Following the word "occupation" was inserted "Truckman." The substance of the defendant's contention is that this proof discloses Willis's employees to be protected as truckmen; that at the time plaintiff sustained his injury he was engaged as a mule-skinner. The defendant's undertaking was to protect and insure the employees of Willis against industrial injuries sustained in the course of their employment, and to compensate for such injuries, if sustained. The courts are and should be concerned with the reasonable and practical application of the undertakings of parties to contracts when not inconsistent with and contrary to the law and the terms of the contract. The performance of a primary obligation is not to be avoided by technical construction. The proof discloses Willis was a trucking contractor, and that he used both teams and trucks in his work. The evidence is that plaintiff had worked on trucks and around trucks and skinned mules while engaged by Willis. On the occasion of plaintiff's injury Willis used both trucks and teams. The use of both were at least practical, if not necessary. A truck equipped with a wince and cable was parked in the sand; the team moved the boards

which constituted a track to skid the well rig upon; when the rig had been drawn to the truck, the truck was parked in another position and the operation repeated. The use of teams does not constitute Willis something else other than a truckman. An employer of labor, as contended for by the defendant, may insure one separate class or group of employees separately employed and engaged. Standard Accident Ins. Co. v. Barron, Tex.Civ.App., 47 S.W.2d 380. He may not discriminate, and if one class or group be separately employed and insured, that must clearly appear. Texas Employers' Ins. Ass'n v. Stanton, Tex.Civ. App., 140 S.W.2d 337. That condition does not appear here. We regard the contention of the defendant as purely technical, and it is overruled.

We find no error in the record, and the judgment of the trial court is accordingly affirmed.