## TRAVELERS' INS. CO. v. RICHMOND.
### (No. 915–4682.)

(Commission of Appeals of Texas, Section A. March 9, 1927.)

1. **Master and servant** ⟜385(11¼)—**Loss of sight is not "total," where considerable vision is attained by use of glasses (Rev. St. 1925, art. 8306, § 12).**

Loss of sight is not "total," within Rev. St. 1925, art. 8306, § 12, where by use of glasses a large percentage of normal vision is attained; "total" meaning all.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total.]

2. **Master and servant** ⟜385(1)—**"Incapacity" denotes lack of adequate power (Rev. St. 1925, art. 8306, § 12).**

"Incapacity," as used in Rev. St. 1925, art. 8306, § 12, without qualifying words, denotes inefficiency, incompetency, lack of adequate power, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incapacity.]

3. **Master and servant** ⟜385(1)—**Existence and degree of "incapacity" are questions of fact (Rev. St. 1925, art. 8306, § 12).**

The existence or not of "incapacity," within Rev. St. 1925, art. 8306, § 12, and the extent of its degree, if it should be found to exist at all, are fact inquiries in any given case.

4. **Master and servant** ⟜385(1)—**Wages before and after injury are not conclusive on existence and extent of incapacity.**

The amount of wages received after the injury complained of, of itself, does not determine the existence or not of "incapacity" and the degree thereof, though they are to be considered.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. **Master and servant ⬳385(8)—Weekly wages before injury are to be considered in determining compensation for partial incapacity (Rev. St. 1925, art. 8306, §§ 11, 12, art. 8309, § 1).**

Under Rev. St. 1925, art. 8306, § 12, art. 8309, § 1, providing that in cases of partial incapacity compensation shall be paid at 60 per cent. of the average weekly wages, account is taken only of wages received prior to the injury, though a different rule might apply in a case controlled by article 8306, § 11.

6. **Trial ⬳350(3)—Refusal to submit issue whether loss of vision occurred, or could be restored by use of glasses, held not error.**

In proceedings under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309) for loss of vision, refusal to submit issue whether vision was impaired and, if so, whether it could be restored to normal by use of glasses, *held* not error.

7. **Master and servant ⬳418(7)—Lower courts' erroneous treatment of case as involving total loss of sight held to require remand (Rev. St. 1925, art. 8306, § 12, art. 1771).**

In proceeding under Workmen's Compensation Act, where lower courts proceeded on erroneous theory that injury was compensable under Rev. St. 1925, art. 8306, § 12, as for total and permanent loss of one eye, whereas evidence disclosed only partial loss of sight compensable under a subsequent provision of the same section, *held* case should be remanded under article 1771, for development along proper lines.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by the Travelers' Insurance Company against L. D. Richmond to set aside an award of the Industrial Accident Board. Judgment for defendant was affirmed by the Court of Civil Appeals (284 S. W. 698), and plaintiff brings error. Reversed and remanded.

Wistner & White, of Port Arthur, and Oliver J. Todd, Chas. S. Pipkin, and A. D. Moore, all of Beaumont, for plaintiff in error.

Howth, Adams & Hart, of Beaumont, for defendant in error.

NICKELS, J. The opinion of the Honorable Court of Civil Appeals is reported in 284 S. W. 698. The evidence touching the more important issues is there fully stated, except that reference to the testimony of Dr. Bruce Richardson, an "eye specialist" and witness for the insurer, is omitted. He testified in substance that he made various examinations of Richmond's eye, etc. (one of which was on August 8, 1922, and another in January, 1923), and found "there was no impairment whatever of the vision with glasses." Dr. Miller, whose testimony is excerpted in the opinion of the Court of Civil Appeals, was called as a witness by Richmond.

At Richmond's request he examined the afflicted eye on May 2, 1924, and his testimony pertained to that examination. The accident happened March 1, 1922.

The statement that "it is undisputed that the injury resulted in a loss of 99 per cent. of the vision," made by the Court of Civil Appeals, must be taken as relating to the degree of vision without the aid of glasses, for it is based upon Dr. Miller's estimate of "disability of the left eye without glasses"; "with glasses," he said, there remained in the eye "91 per cent. vision." Richmond's testimony, in its general estimates, is susceptible of an interpretation which would increase the degree of impairment as given by Dr. Miller or by Dr. Richardson; but it admits existence of some vision "without glasses" and an undefined though appreciably increased degree of vision "with glasses."

We have, then, a situation wherein in any event "sight" is not totally lost, in the absolute sense, for "total" generally comprehends "all" of the thing, etc., with respect to which the adjective is used. East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 663, 13 S. W. 572. A situation, too, where science affords means of use of a substantial portion of what otherwise is thought to be lost. Vision is considered to be a sense for the use of which the eye is a designed agency, and it is to be assumed that the faculty itself remains even though an essential agency be completely destroyed. If the agency be but impaired, the faculty is but thwarted pro tanto. For such a case as that before us science has devised appliances which, in substantial part at least, supply the destroyed parts of the agency which nature designed. Through those artificial means, or through those means employed in aid of nature, the sense functions. A solecism exists in a declaration that that which may be recovered is lost, and there is manifest contradiction of terms in saying that a sense, or emotion, which is merely suspended in whole or part for a time and which becomes active again is permanently lost.

[1] In our view, the record exhibits undoubted proof that "the sight of one eye" is not "totally and permanently lost." Hence, the injury sued upon and proved is not compensable according to that term of section 12, article 8306, R. S. 1925, regarded as controlling by the district court and the Court of Civil Appeals, if the words of that provision are to be given their usual sense. Since the rule just mentioned is specifically fixed for a specific result of a particular kind of injury and since there is in section 12 a more general rule in terms appropriately embracive of the established facts, we do not perceive just reason for requiring the latter one to yield to the former.

The first part of section 12 is made up of definite provisions for compensation in re-

---

spect to specified injuries, the one above mentioned being placed in that portion. This is followed in the text by this provision:

"In all other cases of partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee, and the age at the time of injury. The compensation paid therefor shall be sixty per cent. of the average weekly wages of the employees but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the board may determine."

[2, 3] "Incapacity," as the term is used without qualifying words, denotes "inefficiency," "incompetency," "lack of adequate power," etc. Webster; 22 Cyc. 40. And to the extent that an injury in fact destroys or impairs the person's ability to be as efficient or competent for work after the injury as he was before there is "partial incapacity." Existence of "incapacity" or not and ascertainment of its degree, if found to exist at all, are fact inquiries in a given case under the rule.

[4, 5] In respect to those issues the amount of wages received after the injury does not, of itself, determine; it is a fact to be considered in applying the rule, but it is not conclusive. This is true for various reasons. One is that wages actually received may or may not properly measure the amount of wages which ought. to be received for work actually done. E. g., payments in the name of wages, but in fact by way of pension; or inadequate wages paid for good work in good quantities. Another is, as shown, ability to do work and not the volume of work actually done is the subject-matter. A third is to be found in the substitution made by the statute and consent of the parties for common-law damages recoverable for a personal injury. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. And a fourth inheres in the basis of the measure provided. In cases subject to this provision "the compensation paid * * * shall be sixty per cent. of the average weekly wages," etc., and "weekly wages" are so defined (section 1, art. 8309, R. S. 1925) as that account is taken only of wages received prior to the injury in arriving at that factor. There may be and probably are cases governable by other sections (e. g., section 11, art. 8306) in which wages received after the injury assume controlling importance; but that is not true of cases under the general provision of section 12, for, as remarked, subsequent wages (except for general evidentiary purposes) are in terms excluded in keeping with the statutory defini-

tion of "average weekly wages." Hence, the fact that Richmond "has been working since the injury on the same job drawing the same rate of pay" is not conclusive against his right to compensation. He might be cut off by this fact if the terms of section 11, art. 8306, controlled his case, for in that section a measure of one factor in the amount of compensation is the difference between prior and subsequent wages; but in our opinion, as shown, his case falls within the range of the general provision of section 12 wherein use of that factor is precluded. It may be that the general provision of section 12 leaves but small territory for the operation of section 11; but, if so, the fact merely presents a legislative problem.

Manifestly, the case was tried in the district court and given disposition in the Court of Civil Appeals upon the idea that compensability itself and the amount thereof depends upon the one fact of "the total and permanent loss of the sight of one eye." But the pleading and proof show a case of different character—i. e., impairment of sight plus "damage or harm to the physical structure of the body," etc. (see section 1, art. 8309, R. S. 1925, definition of "injury"). The rights and obligations of the parties, we think, are determinable by unsettled issues of fact, namely: Existence, vel non, of "partial incapacity," and the data essential to application of the general rule of section 12, supra, if "partial incapacity" be found. Upon these issues the possibilities and effect of use of glasses is a fact to be considered along with other relevant facts.

Two issues were submitted to the jury. In one it was inquired whether Richmond suffered an eye injury; in response to the other there was a finding of "total loss of the use of his eye and the sight thereof." For reasons given already, the finding of "total loss" is without warrant and the answer to the other question settles but one important fact.

[6] The insurer requested and the court refused submission of this question:

"Is the impaired vision, if any, of the defendant's" (i. e. Richmond's) "eye such that same can be corrected or restored to normal by the use of glasses?"

The matter thus sought to be inquired about is a proper subject of evidence, but it does not of itself present an issue to be submitted in an independent way to the jury.

[7] It appears to us that the case has not been fully developed, and that it is one wherein "justice * * * demands another trial" (article 1771, R. S. 1925); hence, we recommend that the judgments of the district court and Court of Civil Appeals be reversed and that the cause be remanded.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both revers-

ed, and cause remanded to the district court as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.