**FIDELITY UNION CASUALTY CO. v. MUNDAY et al.**

No. 1477—5730.

Commission of Appeals of Texas, Section A. Jan. 6, 1932.

Collins & Houston, of Dallas, for plaintiff in error.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for defendants in error.

HARVEY, P. J.

This suit was brought by the Fidelity Union Casualty Company, under the provisions of the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8307, § 5), to set aside a final decision of the Industrial Accident Board awarding to J. D. Munday, the defendant in error, compensation on account of injuries received by the latter while in the employ of Cramer & Company of Dallas. Munday duly filed his cross-petition in which the following allegations occur: "That heretofore to-wit on the 8th day of August 1927, and for a long period of time prior to that date, defendant J. D. Munday was an employee of said Cramer & Company at Dallas, Texas under a contract of hire, whereby he worked for said Cramer & Company in the capacity of concrete finisher at a wage of Ten Dollars ($10.00) per day, and worked six days in each week; that defendant Munday is by trade a concrete finisher and on the concrete work undertaken by his employers, did the finishing work on the job; that said work is strenuous work, requiring the use of trowel, straight edge, sledge hammers, and other tools; that heretofore, to wit, on the 8th day of August, 1927, said Cramer & Company were engaged on a concrete job in Dallas, Dallas County, Texas; that in connection with such work, said employers always used a heavy machine known as a concrete mixer; that on said date defendant Munday was undertaking to tighten the bowl on the concrete mixer and in so doing, his right hand was caught and crushed between the bowl and the frame of the mixer; that said accident resulted in defendant receiving deep lacerations and bruises on the back of his hand and other serious injuries to his hand, as follows to-wit: a fracture of the second meta-carpal bone and bruising of the soft tissues of the hand; sprains of the joints including the wrists, a dislocation of the terminal phalanges of the third and fourth fingers, a severe wrenching of the tendons of the hand; a decided separation or enlargement of the spaces between the index finger and the second finger of the injured hand, and the displacement of the phalanges of the third and fourth fingers of the hand; that as a result of said injuries to his hand, said hand has become and now is numb and lifeless, and the joints in the fingers of the hand are without the proper amount of flexion and are stiff, and all the joints of the hand and fingers are stiff, so that defendant is unable to close his hand or to exert any use or control over the movements of the same, and defendant suffers continually pain in said hand. The index finger on the injured hand has been forced beneath the middle finger so that it is completely out of alignment, thus making it lack coordination; that the hand becomes swollen and inflamed at frequent intervals, which condition is aggravated by any attempt to use the hand or exercise it; that said injuries have rendered defendant totally and permanently disabled in the use of his right hand; that defendant will always be powerless to ever again use said hand in plying the tools of his trade or in performing any kind of physical labor; that by reason of said injuries, defendant is entitled to receive compensation at the rate of $20.00 per week for a period of one hundred and fifty weeks."

The cross-petition concludes with a prayer for judgment for compensation for 150 weeks at the rate of $20 per week from August 8, 1927, and for general relief. Issue being joined on the issues tendered in the cross-petition, the case was tried to a jury on special issues. The jury in answer to the several special issues submitted to them found: That Munday, as a result of his injuries, sustained a total loss of the use of his right hand, for the period of 15 weeks; that the injuries to his right hand are permanent; and that, as a result of said injuries, he suffered a permanent partial loss of the use of his right hand, to the extent of 75 per cent. There was evidence to support all these findings. The trial court entered judgment in favor of Munday for weekly compensation at the rate of $20 per week for 15 weeks, on account of temporary total loss of the use of his right hand; and at the rate of $15 per week, thereafter, for the period of 135 weeks, on account of the permanent, partial loss of the use of his right hand. That judgment was by the Court of Civil Appeals so reformed as to deny Munday a recovery on account of the temporary total loss of the use of his hand, but to allow a recovery of compensation at the rate of $15 per week for 150 weeks, on account of the permanent, partial loss of the use of said hand; that being 75 per cent. of the weekly compensation he would have been entitled to receive, under the statutory provisions hereinafter set out, if the loss of the use of the hand had been total and permanent. 26 S.W.(2d) 676.

■ It will be observed that the cross-petition does not, in express terms, aver an inca-

pacity for work, of any degree or duration, as a result of the injuries to the hand, which are the only injuries alleged. It is contended, in effect, that nowhere in the Workmen's Compensation Law is a temporary total loss of the use of a hand, or a permanent partial loss of the use of that member, made compensable, in the absence of an affirmative showing of the fact that incapacity for work, of some degree or duration, resulted therefrom. It is asserted that, for this reason, the cross-petition is insufficient with respect to those losses. The contention is ill founded. Article 8306 of the statutes, being part of the Workmen's Compensation Law, reads partly as follows:

"Sec. 12. For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent of the average weekly wages of such employee, but not less than $7.00 per week nor exceeding $20.00 per week, for the respective periods stated herein, to-wit: * * *

"For the loss of a hand, sixty per cent of the average weekly wage during one hundred and fifty weeks. * * *

"In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss·of the use of a member shall be equivalent to and draw the same compensation as the loss of that member. * * *"

▮ With regard to a permanent partial loss of the use of a hand, it has been repeatedly held, in effect, that such a loss comes within the purview of the above provisions and that payment of compensation each week, as there provided, is required to be made in the proportion that the use of the hand is permanently lost. Petroleum Casualty Co. v. Seale (Tex. Com. App.) 13 S.W.(2d) 364; Lumbermen's Reciprocal Ass'n v. Pollard (Tex. Com. App.) 10 S.W.(2d) 982; Texas Employers' Ass'n v. Maledon (Tex. Com. App.) 27 S.W.(2d) 151. That holding was expressly approved by the Supreme Court in the Seale Case, and impliedly approved in the other two. In conference with the Supreme Court, we have been authorized to declare all holdings to the contrary, in other cases, overruled.

▮ With regard to the temporary, total loss of the use of a hand, where no injuries except to the hand are involved, it is our opinion that such a loss is contemplated by the above-quoted provisions of the statute; and that weekly payments of compensation was meant to be provided thereby, for a period of time corresponding to the duration of such loss, at the same rate, and subject to the same time limitation, as in case of permanent loss of the use of a hand. In reaching this conclusion we rely largely on the holding in the cases cited

above. The reasons given for· the holding there made apply with equal force here. We are mindful that, as we construe the quoted statutory provisions, a temporary, total loss of the use of a hand for as much as 150 weeks would call for the same total amount of compensation as if the loss were permanent. But in the very nature of things the degree of incapacity for work, which results exclusively from a temporary, total loss of the use of a hand, is, for the time being, the same as if such loss were permanent. In either case, the resulting incapacity for work is only partial. If the quoted provisions of the statute were not intended to apply to cases which involve a temporary, total loss of the use of a hand, and which involve no other injuries than to the hand, then it would necessarily follow that compensation for such a loss was intended to be governed by other provisions which occur elsewhere in the Compensation Law, and under which a greater compensation would be available, if the loss endured for more than 150 weeks, than would,be available if the hand were severed. Paraphrasing the language of Judge Leddy in the Seale Case, it is clear, when the Workmen's Compensation Law is construed as a whole, that it was never contemplated that one employee, who has sustained a total loss of the use of a hand for a longer period of time than 150 weeks, the loss not being permanent, should receive more compensation than another employee who permanently and totally loses the use of a hand. By the same token, it would be unreasonable to suppose that the Legislature meant that an employee, who has sustained injuries to the hand, exclusively, and as a result has suffered both a temporary, total loss of the use of that member and a permanent partial loss of the use thereof, should receive compensation for the first loss, according to its duration, and, in addition, receive weekly payments of compensation for the period of 150 weeks for the second loss. It was· meant that the weekly payments of compensation for the second loss should run during the portion of the provided period of 150 weeks that is not covered by payments of compensation for the first loss.

The several findings of the jury are supported by pleading; and the payment of compensation as provided in the judgment of the trial court is, in all respects, in accordance with the quoted statutory provisions, and tho implications arising therefrom. We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be in all respects affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.