### TEXAS EMPLOYERS INS. ASS'N v. THRASH.

#### No. 3825.

Court of Civil Appeals of Texas. El Paso.

Jan. 11, 1940.

Rehearing Denied Feb. 8, 1940.

Whitaker, Perkins & Turpin, of Midland, and Scarborough & Ely, of Abilene, for appellant.

Thomas B. Ridgell and G. Ray Lee, both of Dallas, for appellee.

PRICE, Chief Justice.

This was an action instituted by W. M. Thrash, as plaintiff, hereinafter so called, against Texas Employers Insurance Association, defendant, hereinafter so called, to set aside an award of the Industrial Accident Board. Plaintiff in his petition and also in his testimony alternatively sought to bring himself under the general provisions of the Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.); and also sought recovery for specific injury, including total loss of the right eye and partial loss of the left. It was alleged that he suffered accidental injury while an em-

ployee of Banks G. Moreland by being struck in the eye by a rivet, the result of which was total loss of the sight of the right eye and injury to the left and likewise alleged a total and permanent loss of capacity to work. Defendant answered by general denial. The case was submitted to a jury on special issues. After the verdict was returned the court entered judgment in the sum of $1200, payable in weekly installments of $20 per week, payments to commence as of August 27, 1937, and an additional sum of $19.20, payable in sixteen weekly installments. The defendant duly perfected an appeal and plaintiff has likewise filed cross assignments of error.

The jury found plaintiff suffered accidental injury as he alleged on August 27, 1937; such injuries were suffered while in the service of Banks G. Moreland, the insured; that same were in the course of his employment; that as a natural result of such injury he suffered total loss of the right eye and partial loss of the vision of the left eye; that the partial loss of vision continued for sixteen weeks and amounted to ten per cent of the total vision of the left eye; that the disability was confined solely to the eyes; that plaintiff's average daily wage was eight dollars; that sixty per cent of plaintiff's present disability was not due to former injuries.

Most if not all the other issues were pertinent to a recovery for general injury or injuries as distinguished from specific injuries.

■ If plaintiff's injuries were specific it is immaterial the extent to which they caused a diminution of his capacity to labor. In case of a specific injury the workman is entitled to recover the amount provided by law even though his incapacity to labor has not been injuriously affected; on the other hand, he is limited to the amount fixed by law for a specific injury even though his capacity to labor has been permanently and totally destroyed. Petroleum Casualty Co. v. Seale, Tex.Com. App., 13 S.W.2d 364; Fidelity Union Casualty Co. v. Munday, Tex.Com.App., 44 S.W.2d 926; Texas Employers Ins. Ass'n v. Maledon, Tex.Com.App., 27 S.W.2d 151.

■ The findings as to partial permanent economic disability in no way conflict with the finding of specific injury. In other words, a specific injury may or may not result in economic incapacity. If the injury be specific the finding of economic incapacity is immaterial.

■ This verdict finds specific injuries to the eyes rather than a general injury. In rendering judgment on the verdict we think the trial court was in error in discounting the amount of the recovery forty per cent. The finding on special issue 27 was immaterial. Such finding unquestionably referred to economic incapacity and not a decreased functioning of the organs involved. The issue could not refer to injury to the right eye for it was totally gone.

■ We do not want to be understood as holding that there cannot be a recovery for total permanent disability where specific injury exists coupled with other injuries or where the effects of specific injury extend beyond the portion of the body involved. What we do hold is that where there is only specific injury the recovery is limited to such injury.

Defendant complains of the form of special issue No. 2. It was as follows: "Do you find from a preponderance of the evidence that such injury, if any, sustained by the plaintiff, W. M. Thrash, on or about August 27th, 1937, was sustained by him while working as an employee of Banks G. Moreland?"

■■ It is strongly and plausibly maintained that this does not submit the issue of employment. Giving the wording of the issue the commonly ascribed meaning we do not think it is subject to this criticism. Our opinion is fortified by the definition the court gave of an employee. If the court had substituted for the word "working" "in service," the words would have been part of the statutory definition of an employee. The query "for whom are you working" does not popularly under all conditions refer to your activities at the moment. It is suitable to convey the query as to "by whom are you employed?" Special issue No. 3 reinforces this meaning of No. 2. If it was meant to be interpreted by the jury as "was he at that moment engaged in a physical work he had been employed to perform," why No. 3? It is elementary that the submission of the case must be viewed as a whole. The language used in the submission should be interpreted in the light of the issues made by the evidence and pleading. Plaintiff at about the time of the alleged injury was reporting to defendant the first time for

work. Under his testimony he was ordered to proceed therewith and did so. Defendant, on the other hand, held the theory and supported same by testimony that when plaintiff reported he was refused work and did not go to work or take any steps appropriate to do so; that he did not go inside the oil tank in the course of construction where he claimed to have been struck in the eye by rivet. Further, under the testimony if plaintiff was working at the time of the injury, it is almost certain his version of the matter is correct and he was an employee.

The form of special issue No. 4 is vigorously assailed. No. 4 was as follows: "Do you find from a preponderance of the evidence that plaintiff has sustained the total loss of his right eye as a natural result of said accidental personal injury, if any, of date on or about August 27th, 1937?"

Defendant introduced testimony tending to show a complete permanent loss of vision in the right eye as a result of an injury occurring in 1919 when plaintiff was in the service of another employer. If there had not been a complete prior loss of vision in the right eye, it is contended then that the vision was so small as to be of no practical benefit to plaintiff in his trade. Plaintiff, while admitting impairment of vision of his right eye, testified that he had vision in that eye and with glasses same was of practical benefit in the performance of his work.

Suffice it to say under the evidence the issue was fairly raised under the testimony as to whether or not the vision of plaintiff's right eye had not been practically permanently destroyed prior to the injury complained of here to that member. A short time subsequent to the alleged injury it had been necessary to remove plaintiff's right eyeball. At the trial he had a glass eye in the right socket.

Section 12, Article 8306, R.C.S., provides for compensation: "For the total and permanent loss of the sight of one eye." The ultimate issue was, did he lose the sight of his right eye? He did not lose it as a result of the accident, if it was sightless before the injury. On the other hand, the removal of the eye constituted the total and permanent loss of such vision, if any, as there was in the right eye. If there was no vision in the eye he did not lose the sight of his eye, but did lose an eyeball that did not function as an organ of sight.

If at the time of the accidental injury to plaintiff's right eye he had therein any useable vision we think he would be entitled to recover the amount provided in Section 12 of the Article above cited for the total and permanent loss of the sight of his right eye. Hartford Accident & Indemnity Co. v. Leigh, Tex.Civ.App., 57 S.W.2d 605; City of Shelbyville v. Kendrick, 161 Tenn. 149, 29 S.W.2d 251; Travelers' Ins. Co. v. Richmond, Tex.Civ. App., 284 S.W. 698; Id., Tex.Com.App., 291 S.W. 1085.

On the other hand, if there was no useable vision in the eye at the time of the injury he would not be entitled to recover under Section 12 for the one hundred weeks permanent total disability, or rather the amount equivalent to compensation for such total disability. The issue as phrased was not, under the rather peculiar facts in this case, apt to elicit a specific and definite finding on an ultimate issue conditioning the liability or nonliability on this feature of the case.

Defendant excepted to the issue as formulated on substantially this ground. We think the assignment presents reversible error. The burden was on the plaintiff to show a loss of sight. The loss of the eyeball might, under ordinary conditions, be construed as a total loss of sight. Surely this would be true if useable sight existed prior to the injury. Here the evidence raises the issue whether useable sight did exist before the injury. It cannot be said that it clearly appears from the record that the jury were not misled by the form of the issue. The loss of the sight of the right eye was what liability depended upon. It is the right of defendant to have this issue clearly and definitely submitted. Sight is a sense and not an organ. It is the power of perception of external objects through the eye. Conceding the non-existence of sight in the eye prior to the injury, we do not mean to hold that the loss of a sightless eye would not present grounds for compensation under the Workmen's Compensation Act. There is no question but what it would; likewise there is no question but what it would not constitute a specific injury.

In view of another trial we deem it appropriate to consider the question of average weekly wages. It is hardly necessary to set out subsections 1, 2 and 3 of Section 1 of Article 8309, R.S. The basis for compensation is the wages for

the year next preceding the injury. Under subsection 1 actual earnings of the plaintiff are used as the base; under subsection No. 2 the wages of an employee other than the plaintiff for the year next preceding are the base; in case neither 1 nor 2 applies by their terms, then No. 3 is applied. The underlying purpose is to compensate to the extent provided, for lost capacity to earn wages, through an industrial accident on the basis of full time employment. Texas Employers Ins. Ass'n v. Clack, Tex.Com.App., 132 S.W.2d 399.

Beyond question, in the instant case subdivision 1 does not apply. The employment began and ended on the same day. Plaintiff had only worked some ten or fifteen days during the year preceding in a similar employment for another employer. Now as to No. 2 the evidence did not show that in the relevant district an employee had worked for substantially the whole of a year, or, had there been such an employee, his wages. This is not strictly the question. The real question is, did the evidence conclusively show that there was no such an employee? There was unquestionably evidence strongly tending to show the non-existence of such an employee. We are inclined to believe the evidence was sufficient in this respect to amount to proof. Federal Underwriters Exchange v. Stewart, Tex.Civ.App., 109 S.W.2d 1031; Texas Employers Ins. Ass'n v. Roberts, Tex.Civ. App., 116 S.W.2d 417; Traders & General Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W. 2d 650; Traders & General Ins. Co. v. Locklear, Tex.Civ.App., 119 S.W.2d 153.

However, we make no ruling on the matter as the evidence may be different on another trial. Furthermore, had there been such an employee as contemplated by said subsection 2, the evidence is almost conclusive that sixty per cent of his average weekly wages would have exceeded $20. The employment in which he was engaged was skilled and the wages seem to be rather generally established.

It is unnecessary to discuss the question of the sufficiency of the evidence to sustain the finding as to the average weekly wage, as the evidence may not be the same on another trial.

In regard to the finding as to partial loss of the vision in the left eye the recovery therefor should not, in our opinion, have been discounted forty per cent.

Reversed and remanded for a new trial.