**Roland Dean BISHOP, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 8873.

Court of Civil Appeals of Texas, Amarillo.

March 27, 1978.

Rehearing Denied April 17, 1978.

Appellant's Second Rehearing Denied May 8, 1978.

Bob Huff & Associates, Inc., Robert E. Teel, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil C. Kuhne, Lubbock, for appellee.

REYNOLDS, Justice.

A take-nothing judgment was rendered in this suit for workers' compensation benefits for total and permanent incapacity after the jury found a specific injury for which compensation had been paid. The worker has not demonstrated reversible error. Affirmed.

Roland Dean Bishop was injured on 11 August 1972 during the course of his employment. Insurance Company of North America, the workers' compensation insurance carrier, paid him compensation for 125 weeks.

Bishop instituted his action to recover benefits for total and permanent incapacity. He pleaded a general injury "to his low back, his left hip, left knee and left foot." Answering, the insurance carrier specifically pleaded that Bishop's injury was limited and confined to his left foot below the knee.

A jury found that (1) Bishop sustained an accidental personal injury or injuries to his body on or about 11 August 1972, which (4) resulted in total incapacity that (6) was temporary (7) for a duration of 125 weeks. The jury also found that (8) Bishop sus-

tained or will sustain partial incapacity as a result of the injury or injuries, which (9) began on 1 November 1975, and (10) is permanent. The jury then answered, "It was confined" to special issue no. 16, which inquired:

Do you find from a preponderance of the evidence that the injury of August 11, 1972 was not confined to and limited to his left leg below the knee?

Giving the insurance carrier credit for the compensation paid and finding that Bishop is not entitled to recover further, the court rendered a take-nothing judgment. Bishop seeks to reverse the judgment with five points of error.

Attacking first the submission of and the answer to special issue no. 16 on the ground that there is no evidence to support either, Bishop further contends that the answer is contrary to the great weight and preponderance of the evidence. The argument is that all of the evidence shows that Bishop's back was, to some degree, injured on 11 August 1972 and that his back problem originated at that time. An evidentiary summary is appropriate.

Bishop was employed in driving trucks and hauling heavy equipment. During his work on 11 August 1972, Bishop was standing on an iron rack that was being raised for loading on a truck. The rack fell, and Bishop was thrown to the ground some four feet below. Bishop said he fell on his back, the rack bounced and hit him, and it shattered his ankle. He was taken to a hospital where Dr. Ratliff operated on his left ankle. During the next 22 months, Bishop had a total of six operations on his ankle and was on crutches. The ankle was fused in January of 1975 and, as a result, the left leg is shorter than the right leg. Bishop returned to his same work for three months in mid-1974 and for about the last six months in 1975. A week before Christmas in 1975, he took and continues on a job hauling cattle.

Bishop testified that he noticed pain in his back from the start, but his claim filed with the Industrial Accident Board within six months of the injury made no mention of a back injury. An amended claim dated 5 February 1975 alleged an injury to the low back and left foot, leg, knee and hip. In an August 1975 pre-trial deposition, Bishop testified that the trouble with his back, hips and knee started in 1974 after he went back to work. Bishop said that he complained about his back to Dr. Ratliff on each visit, but there is nothing in Dr. Ratliff's records to indicate any back complaints during the 76 recorded visits before 6 September 1975. On that date there is noted a complaint of tenderness and soreness in Bishop's left leg, hip and back.

On 30 September 1975, Dr. Garland, a neurosurgeon who was the only medical witness who had examined or treated Bishop, saw Bishop on referral from Dr. Ratliff. Dr. Garland obtained X-rays of Bishop's lower back and found them to be normal. The spaces between the bony vertebral column were well maintained without any evidence of slippage; there was no evidence of congenital or long-term type of abnormality; and there was no reason to believe that Bishop has a ruptured disc.

Dr. Garland performed a standard neurological examination with particular reference to the lower back and problems of the spinal cord and nerves leaving the lower back and entering the leg. He found that Bishop was tender in the lower back, particularly around the left hip joint in the back of the leg. As a preliminary diagnosis, Dr. Garland opined that Bishop was suffering from a mechanical strain or weakness in the lower back precipitated by a number of events, and particularly by the stress put on the back by the fact that Bishop was down in bed a long time, he "gave" to the ankle, and by the way he walked. Dr. Garland prefaced his listing of the events with the comment: "Certainly, the fall didn't do him any good." Shortly thereafter, he was asked, "Did you find any evidence or indication of direct injury from a fall or anything of that nature initially?" He replied, "No, sir."

Mrs. Bishop, a nurse who has known Bishop since 1969 and married him 31 May 1974, testified that Bishop's back was giving him all kinds of problems and that in

1973 he said he was having problems with his back. Howard Warren Smart and Herbert Marquinn, Bishop's former co-workers, and Jack Stewart, an employee of the company where Bishop worked before and after his injury, testified that Bishop complained about his back after his injury. The company field auditor, John H. Carver, testified that Bishop said the operation made his ankle stiff, and the limp and stiffness had caused his back to start hurting.

After considering the evidence under the standards of review required, we find some evidence of probative force to support the submission of and the answer given to special issue no. 16, and we cannot say that the answer is so against the great weight and preponderance of the evidence as to be wrong and manifestly unjust. The presence of evidence that gives support to an inconsistent answer does not justify the setting aside of the answer the jury determined to be the most reasonable. *Holly Sugar Company of Hereford v. Aguirre*, 487 S.W.2d 421, 425 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.).

Next, Bishop submits that the court erred in deleting the words "a herniated disc in" from the report of Dr. Ratliff. The basis of the submission is that the entire report was admissible as a business or medical record to show Dr. Ratliff's "complete agreement with the other physicians."

As hearsay, Dr. Ratliff's diagnosis is admissible by authority of the Business Records Act, Vernon's Ann.Civ.St. art. 3737e, only if it is one upon which competent physicians would normally agree, *Eubanks v. Winn*, 469 S.W.2d 292, 296 (Tex. Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.); but, if the diagnosis is genuinely disputed, and necessarily rests in expert opinion, it is not competent evidence. *Thomas v. International Insurance Company*, 527 S.W.2d 813, 818 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.). *Accord, Loper v. Andrews*, 404 S.W.2d 300 (Tex. 1966). Because the hearsay diagnosis was directly disputed by Dr. Garland's testimony, the court did not err in deleting it.

Lastly, Bishop asserts that the answers to special issues nos. 1, 8, 9 and 10 constitute a finding of a general injury which is in fatal conflict with the special issue no. 16 finding of a specific injury. We perceive no irreconcilable conflict.

Our law provides compensation for the incapacity for work resulting from a general injury and designated amounts of compensation for an injury to specific members of the body. An injury confined to a specific member of the body may result in total or partial incapacity, but the compensation is limited to the amount prescribed by the statute for that injury, *Argonaut Insurance Company v. Newman*, 361 S.W.2d 871, 874 (Tex.1962), and recovery cannot be extended by showing that, because of the specific injury, the worker is incapacitated from performing the usual tasks of a worker. *Petroleum Casualty Co. v. Seale*, 13 S.W.2d 364, 366 (Tex.Comm'n App.1929, holding approved).

Bishop pleaded a general injury; he did not plead, and he disclaims, that he sustained a specific injury which extended to and affected other general parts of his body. By its pleadings, the insurance carrier attempted to limit Bishop's recovery to a specific injury.

Thus Bishop, to warrant a verdict of an incapacitating general injury under the pleadings, not only had to persuade the jury by a preponderance of the evidence that the pleaded concurrent injuries to specific and general portions of his body produced the general injury, but he had to go further and persuade the jury that his injury was not limited and confined to the left leg below the knee. By the special issue no. 16 answer, which has withstood Bishop's attacks, he failed to establish a general injury. *Accord, Banks v. Millers Mutual Fire Insurance Company of Texas*, 476 S.W.2d 768, 771 (Tex.Civ.App.—Texarkana 1972, no writ).

As this appeal is postured, Bishop has not shown reversible error. His points of error are overruled.

The judgment is affirmed.

## ON MOTION FOR REHEARING

Urging in his motion for rehearing that we erred in overruling his points of error, Bishop notes his difference with our evidential summary in four respects. He enumerates that: 1) his first claim was for injuries to the body in general; 2) in his pre-trial deposition he also answered, "Well, I have always had trouble with my back hurting ever since the accident, my lower back;" 3) in Dr. Garland's testimony, he also stated, "I have no reason not to believe Mr. Bishop and he tells me that it [the back hurting] is dated back actually to the time of the injury;" and that 4) the witness Carver also gave testimony that Bishop said at times, the number of which Carver could not answer, "about his back bothering him." In the interest of accuracy and fairness to Bishop, we add these items to our evidential summary.

The appellate record has been reconsidered in the light of the motion for rehearing. After reconsideration, we are not persuaded to depart from our original opinion.

The motion for rehearing is overruled.