NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, Appellant,

v.

Felipe LUCIO, Sr., as Father and next
friend of Felipe Lucio, Jr., Appellee.

No. 08–83–00047–CV.

Court of Appeals of Texas,
El Paso.

July 25, 1984.

Rehearing Denied Aug. 29, 1984.

Dennis L. Richard, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Alejandro Duran, Jr., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This case presents the question of whether uncorrected vision or vision corrected by glasses is the standard for determining the loss of the sight of an eye under the Workers' Compensation Act. The trial court ruled that uncorrected vision was the standard and granted the workman's motion for summary judgment. We affirm.

The claimant, Felipe Lucio, Jr., was doing carpentry work when a nail flew into his left eye. The nail penetrated the cornea of the eye, cut the lens and resulted in surgical removal of the lens. The surgery left the claimant legally blind in his left eye, but with the use of a contact lens he has normal distance vision and with glasses he then has normal vision close-up for reading. The Appellant insurer contends that because of this correction a fact question exists as to whether the claimant has lost the use of his eye. It argues that a jury is entitled to consider the impact of an artificial appliance on the visual acuity of a claimant under Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 12, para. 19 (Vernon Supp.1984). Section 12 provides for specific compensation for injury to enumerated members of the body in lieu of other compensation under the Workers' Compensation Act. Paragraph 19 reads:

> For the total and permanent loss of the sight of one (1) eye, sixty-six and two-thirds per cent (66 ⅔%) of the average weekly wages during one hundred (100) weeks.

Section 12 also provides that the permanent loss of use of a member is equivalent to the loss of a member.

We do not have in this case a question of the degree of uncorrected impairment. It is undisputed that following removal of the lens the claimant was "legally blind" in that eye. His vision was 20/400 and anything less than 20/200 is legally blind. With the contact lens and glasses, the claimant has 20/20 vision. The question then is whether a fact question exists in determining "the loss of sight" under Section 12. Clearly the extent of loss of vision

would ordinarily be a fact question, but that is not in dispute here. It is then a question of law as to whether Section 12 "loss of sight" means uncorrected or corrected by artificial appliances.

We conclude that the answer to the legal question is that the proper standard for loss of sight under the act is the uncorrected vision. We reason that loss having occurred, it continues unless there is recovery. The condition will not improve; it is permanent. Correction by artificial appliance does not effect a recovery. Recovery and correction are not the same. The lens and glasses are not instruments to improve or cure. They are beneficial only when in place and are subject to being lost, broken or becoming ill-fitted or ineffective. On the happening of any such event, the loss returns, if it can be said that it ever went away. Corrective lenses are just that, corrective.

There is no clear Texas case law on the question of whether corrective lenses should be considered in determining loss of sight. The early case of *Travelers' Ins. Co. v. Richmond*, 291 S.W. 1085 (Tex. Comm'n.App.1927, holding approved), is cited by the insurer in this case for the proposition that the jury should be allowed to consider the beneficial effects of glasses or contact lens in determining whether or not the claimant has lost the use of his eye. As we read *Richmond*, the Commission of Appeals reversed the jury finding of "total" disability because the evidence consisted of a finding by one doctor that uncorrected vision was a loss of ninety-nine percent, but glasses would make that loss only nine percent; and another doctor's finding was that there existed some vision "without glasses" and an appreciably increased degree of vision with glasses. Said the court:

> We have, then, a situation wherein in any event "sight" is not totally lost, in the absolute sense, for "total" generally comprehends "all" of the thing, etc., with respect to which the adjective is used.

That unclear basis for overturning the finding is followed by a holding that the loss should not be tested under the total loss provision of Section 12, but should be treated as compensible under a subsequent provision of Section 12 and determined on the basis of incapacity. It was said that in considering incapacity to be as efficient or competent for work after the injury as before, the use of glasses is a fact to be considered along with other relevant facts. The insurer had requested an issue on whether the claimant's impaired vision was such that it could be corrected or restored to normal by the use of glasses. The court held that the inquiry was a proper subject of evidence, but does not itself present an issue to be submitted in an independent way to the jury. The case was remanded for another trial.

In essence, as related to our problem, the holding is that in determining the issue of the workman's incapacity, the use of glasses is to be considered. The holding that incapacity is the issue under a Section 12 specific injury case is no longer valid. It has been overruled. *Great American Indemnity Co. v. Stultz*, 56 S.W.2d 200 (Tex. Civ.App.—Eastland 1932, error ref'd). *Fidelity Union Casualty Co. v. Munday*, 44 S.W.2d 926 (Tex.Comm'n.App.1932). Specific injuries under Section 12 are not based on their effect on the workman's incapacity or ability to obtain and retain employment. The legislature has provided a system of compensation for incapacity for work resulting from a general injury and designated specified amounts of compensation for injuries to specific members of the body. *Bishop v. Insurance Company of North America*, 565 S.W.2d 83 (Tex.Civ.App.— Amarillo 1978, writ ref'd n.r.e.). The amount is fixed as to each member with "compensation per se" for loss of that member. *Stultz*, supra.

> The statute embraces "temporary, total loss of the sight of an eye," and "permanent, partial loss of the sight of the eye," the same as "temporary, total loss of use of the hand," or "permanent, partial loss of use of the hand," or other such member. *Stultz*, supra.

That compensation under Section 12 is not tied to lost earning capacity is further indicated by the holdings that a specific member injury may result in total or partial incapacity, but the compensation is limited to that prescribed for the specific member. *Argonaut Insurance Company v. Newman,* 361 S.W.2d 871, 874 (Tex.1962); *Texas Employers Insurance Association v. Wilson,* 522 S.W.2d 192 (Tex.1975). As this Court explained it as early as 1940 in *Texas Employers Ins. Ass'n v. Thrash,* 136 S.W.2d 905 (Tex.Civ.App.—El Paso 1940, dism.judgm.cor.):

> If Plaintiff's injuries were specific it is immaterial the extent to which they cause a diminution of his capacity to labor. In case of a specific injury the workman is entitled to recover the amount provided by law even though his incapacity to labor has not been injuriously affected; on the other hand, he is limited to the amount fixed by law for a specific injury even though his capacity to labor has been permanently and totally destroyed. *Petroleum Casualty Co. v. Seale,* Tex.Com.App., 13 S.W.2d 364; *Fidelity Union Casualty Co. v. Munday,* Tex.Com.App., 44 S.W.2d 926; *Texas Employers Ins. Ass'n v. Maledon,* Tex.Com.App. 27 S.W.2d 151.

In *Travelers Insurance Company v. Seabolt,* 361 S.W.2d 204 (Tex.1962), cited by the dissent, the Supreme Court noted there are two concepts of "loss of use," each supported by a line of cases, and the workman can recover under either which the evidence supports. The evidence is tested under the proposition or statement of law:

> A total loss of the use of a member exists whenever by reason of injury, such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member.

This permissive use of either test does not mandate incapacity as a requirement for recovery.

The decisions in other jurisdictions are in conflict on the corrective lens issue, possibly due to the fact that there are variations in state legislation in dealing with the matter. See: Annotations 142 A.L.R. 822 (1943). If incapacity was the measure by which an award is determined under Section 12, then the use of corrective lenses would be a consideration. As we have seen, that is not the case, and when a workman suffers a loss covered under the schedule of specific injuries then he is to be paid the disability compensation provided for that loss.

Having determined that uncorrected vision is the proper standard, the judgment of the trial court is affirmed.

OSBORN, Justice, dissenting.

I respectfully dissent. While I have no quarrel with the results reached by the majority opinion, I cannot agree that that result has been reached under existing Texas law. Believing that this intermediate court is bound to follow the law as stated by the highest court of this state, I am compelled to dissent.

In *Travelers' Ins. Co. v. Richmond,* 284 S.W. 698 (Tex.Civ.App.—Beaumont 1926), the court noted that the sight of the claimant's eye was destroyed for all practical purposes, yet when aided by the use of glasses the sight was substantially restored. The court stated the controlling issue upon which the case had to be decided. It said:

> Therefore the decisive question in the case is, Where the use of an eye is, for all practical purposes, destroyed by an injury to same, in so far as the natural use of the eye is concerned, but by the use of properly adjusted glasses the vision can be largely restored, has the party, within the meaning and intent of the Workmen's Compensation Law lost the use of the eye? In other words, where the eye, by reason of injury, is, for all practical purposes, useless without the aid of artificial means, is the injured party entitled to compensation?

After making note of various authorities from other jurisdictions which had held both that the use of glasses was to be considered in determining the loss of sight and cases which held that the use of glasses was not to be considered in determining the loss of sight, the court followed those cases which held that the use of glasses was not to be considered in determining the loss of use of one's sight under the Workers' Compensation Act.

Upon further review, that decision was reversed and the cause remanded. *Travelers' Ins. Co. v. Richmond*, 291 S.W. 1085 (Tex.Comm'n.App.1927, holding approved). The opinion by the Commission of Appeals pointed out that the claimant had lost ninety-nine percent of his vision, but with glasses, one doctor estimated that he had ninety-one percent vision and the other doctor indicated there was no impairment whatever. In reversing the Court of Civil Appeals, it was noted that the claimant's sight was not totally lost and the court said:

Vision is considered to be a sense for the use of which the eye is a designed agency, and it is to be assumed that the faculty itself remains even though an essential agency be completely destroyed. If the agency be but impaired, the faculty is but thwarted pro tanto. For such a case as that before us science has devised appliances which, in substantial part at least, supply the destroyed parts of the agency which nature designed. Through those artificial means, or through those means employed in aid of nature, the sense functions. A solecism exists in a declaration that that which may be recovered is lost, and there is manifest contradiction of terms in saying that a sense, or emotion, which is merely suspended in whole or part for a time and which becomes active again is permanently lost.

Although the court recognized that a requested special issue was improper, apparently because it was evidentiary, the court nevertheless said: "[t]he matter thus sought to be inquired about (impaired vision corrected by the use of glasses) is a proper subject of evidence, * * *." The

only conclusion to be reached from that opinion is that the effect of glasses in restoring vision may be shown by the evidence and certainly if that evidence is admissible then it must be considered by the trier of the facts. That was the conclusion reached by both the majority and the dissenting opinion in *Aetna Casualty & Surety Co. v. Davis*, 196 S.W.2d 35 (Tex.Civ. App.—Dallas 1946, no writ).

In this summary judgment case, the oral deposition testimony of the claimant's own doctor states that the claimant's vision was corrected to somewhere near normal with the artificial lens. He testified as follows:

[Q.] As I have understood your testimony today, by March 16, 1979, Mr. Lucio, Jr., had achieved normal vision in his left eye with the contact lens which was given him by Dr. Fushille?

A. That's right, correct.

Q. And so that as of March 16, 1979, the vision in his left eye was as normal as the vision in his right eye?

A. Right.

Q. Both eyes having 20/20 vision?

A. At distance.

Q. All right.

A. I may add to that particular item that an aphakic eye, which is what we are discussing here, loses the capability of accommodation, and therefore, in order to attain a 20/20 vision at near needs reading glasses.

Q. As a matter of fact, Doctor, I believe by June 27, 1979, a bifocal lens was prescribed which eliminated that problem and gave Mr. Lucio normal vision for both distance and reading, is that not correct?

I can see you nod, but the Court Reporter needs to have your answer.

A. Yes.

Q. So that insofar as the sight distance was concerned, by March 16, 1979, Mr. Lucio, Jr., had the same normal vision in both eyes?

A. Correct.

Q. And by June, 1979, he also had the same normal vision in both eyes with regard to his ability to read.

A. Correct.

Attached to the Response to the Motion for Summary Judgment was the affidavit of the physician who fitted the contact lens on the claimant. His affidavit states that after fitting a contact lens the patient was able to achieve 20/20 vision in the left eye. The affidavit filed by the claimant in support of his Motion for Summary Judgment acknowledges that "[w]ith the contact lens I do have vision in the left eye."

Following the holding in the *Richmond* case that the corrected or restored vision "is a proper subject of evidence," I can only conclude in this summary judgment case that the injury to the claimant's eye did not result in total and permanent loss of the sight of the left eye. Certainly, the evidence does not establish the contrary as a matter of law in a summary judgment case.[1]

I also disagree with the majority holding that specific injuries under Section 12 of Article 8306, Tex.Rev.Civ.Stat.Ann., are not based on their effect on the workman's incapacity or ability to obtain and retain employment. The majority concludes that if incapacity was the measure by which an award was determined under Section 12, then the use of corrective lens would be a consideration. Clearly, under the holding in *Travelers Insurance Company v. Seabolt*, 361 S.W.2d 204 (Tex.1962), there exists a right to submit to the jury an issue inquiring if the injury to the specific member is such as to prohibit the workman from procuring and retaining employment. See: Volume 2 Texas Pattern Jury Charges, PJC 26.04 (1970).

The reason I have no quarrel with the results reached by the majority is that practically every state which has passed upon the issue has held "that loss of use should be judged on the basis of uncorrected vision or hearing, and that therefore

loss of use will not be ruled out because some correction is achieved." 2 Larson's Workman's Compensation Law, sec. 58.-13(f)(1983). I would expect that once the issue is again considered by the Texas Supreme Court the decision in the *Richmond* case will be overruled. But until that time, I feel compelled to follow the earlier decision.

But, it must be recognized that if the decision in the *Richmond* case is not followed and the majority opinion in this case is affirmed, there can be dire circumstances for those who have a lens implant before accepting employment and then sustain an eye injury which results in their loss of vision. Even though their corrected vision may have been 20/20, they would not be entitled to workers' compensation benefits because the earlier loss of a lens would have resulted in their total loss of sight and there would be no sight to compensate for in a subsequent injury. See: *Pridgeon v. Industrial Commission*, 89 Ill.2d 477, 60 Ill.Dec. 617, 433 N.E.2d 659 (1982).

For the reasons set forth above, I respectfully dissent.

---

1. The majority holding that "anything less than 20/200 is legally blind" fails to recognize that the statute so defining the word "blind" provides

"with correcting lenses." See: Human Resources Code sec. 91.002(2).