**HOME INDEMNITY COMPANY, Appellant,**

**v.**

**Anthony M. GARCINI, Appellee.**

**No. 01–88–00045–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 11, 1988.

Rehearing Denied Sept. 22, 1988.

Susan A. Allinger, Thomas, Clarke & Associates, Houston, for appellant.

A.R. Valdez, Bellarie, Paul Jensen, Tullis & Jensen, Houston, for appellee.

Before COHEN, STEPHANOW and JACK SMITH, JJ.

OPINION

JACK SMITH, Justice.

This is an appeal from a judgment based on the jury's award of worker's compensation benefits under Tex.Rev.Civ.Stat.Ann. art. 8306, § 12 (Vernon Supp.1988). In its seven points of error, Home Indemnity Company ("Home") makes two basic contentions: (1) that there is no evidence that a blow to the head was the producing cause

of the appellee's subsequent blindness; and (2) that because the appellee was legally blind prior to his injury, there was no compensable loss suffered by the injury.

■ In points of error one, two, and three, Home contends that there is no evidence that the blow to the appellee's head was the producing cause of his subsequent blindness. Specifically, it asserts that there is no causal connection between the event and the subsequent loss of vision.

In determining no evidence points, we consider only the evidence and inferences that tend to support the finding, and we disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is any evidence of probative force to support the finding, the no evidence assertion must be overruled and the finding upheld. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The appellee, a sub-contractor for Pulte Homes, testified that he was in the course and scope of his employment on March 8, 1984, when a large board struck him on the right side of the face. The force of the blow knocked him to his knees and caused his eye to swell and turn red. The appellee reported the injury immediately to his supervisor and had one of his employees drive him home. Upon arriving home, the appellee stated that his eye felt like it had something in it, like cement dust. The following day, the appellee's wife purchased eye drops in an attempt to flush out the "object" in his eye. The swelling subsided after three to four days, but the sensation continued. The appellee stated that he returned to work, but noticed that he would have to raise his head slightly to see someone in front of him. The sensation of a piece of straw and the gradually increasing need to tilt his head up in order to see continued until April 13, 1984, when the appellee totally lost vision in the right eye. The appellee testified that he had not received any other head trauma before or since the March 8th accident. Neither did he have any such symptoms of eye injury before March 8th.

The deposition testimony of Dr. Van Teeters, an ophthalmologist, was introduced by both parties during trial. Dr. Teeters stated that the appellee had had cataracts removed from both eyes. After surgery and with corrective lenses, the appellee's visual acuity returned to 20/20. Dr. Teeters stated that he examined the appellee on April 16, 1984, over a month after the accident, and found him to be suffering from a retinal detachment in the right eye. This type of detachment is caused by a retinal tear and subsequent "wash through the tear" lifting the retina off the wall of the eye.

The doctor stated that the appellee was suffering from rhegmatogenous retinal detachment caused by vitreous retina traction, where the vitreous becomes more liquid, and this movement stresses the retina causing it to tear. The doctor stated that this movement "will spontaneously shift" or that it was possible "that force, a blow or movement of the jelly of the eye ... [could] cause this tractional force to occur and the tearing to result." Dr. Teeters had no medical opinion on whether the blow to the head, based on "reasonable medical probability," caused the retinal detachment. However, he stated that:

> [t]hese eyes will detach at some point where he's sitting still ... or certainly it's true, that if that vitreous is liquid enough that a blow to that eye or head snaps the vitreous it may pop loose at that time. It [the blow] could have been precipitating factor, but I was not there to see it, but theoretically it could be.

Further, Dr. Teeters stated that the feeling of a little piece of hay in the eye "could represent the motion or movement of this jelly," and that he would examine a patient complaining of this symptom immediately to locate the tear before detachment occurred. Dr. Teeters stated that the need to tilt the head back in order to see was a sign that the retina had already detached.

The Texas Supreme Court has held that, in order for a worker to recover for an injury under the Workers' Compensation

Act, he must prove that the work related event in reasonable probability produced the injury. *Griffin v. Texas Employer's Ins. Ass'n*, 450 S.W.2d 59 (Tex.1969).

> The trier of fact is usually allowed to decide the issue of causation in cases ... (1) when general experience and common sense will enable a layman fairly to determine the causal relationship between the event and the condition; (2) when scientific principles, usually proved by expert testimony, establish a traceable chain of causation from the condition back to the event; and (3) when probable causal relationship is shown by expert testimony. *See Parker v. Employers Mutual Liability Ins. Co.*, Tex.Sup., 440 S.W.2d 43. This does not mean that the court, in determining whether the issue should be submitted to the jury, must consider only evidence of one type to the exclusion of that falling into the other categories.

*Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex.1970).

The evidence in the instant case reveals that: (1) the appellee was hit in the head on March 8, 1984; (2) the blow caused the area around his right eye to swell and redden; (3) the appellee immediately reported the incident to his supervisor; (4) his eye felt as if he had cement dust in it; (5) he repeatedly washed out his eye, but the straw or hay sensation continued; (6) the appellee noticed that he had to tilt his head back to see people in front of him; (7) the need to tilt his head became more aggravated until April 13, 1984, when he lost vision in the eye; (8) Dr. Teeters testified that a blow to the head could cause the vitreous to "pop loose" but that he could not state with reasonable medical probability that the injury had caused the retina to detach; (9) Teeters stated that the sensation of straw in the eye could be movement of the vitreous in the eye, causing the doctor to immediately look for a retinal tear; and (10) Teeters also testified that the need to tilt one's head back in order to see would indicate that the retina had already detached from the wall.

These facts indicate that this case is not one where general experience and common sense will enable a layman to determine the causal relationship between the event and the injury. Nor is this a case where medical evidence alone is necessary to prove the causal connection. *Texas Employers' Ins. Ass'n v. Thompson*, 610 S.W.2d 208, 209–10 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("testimony of medical experts is considered the only probative evidence where the case deals with the cause, progression, and aggravation of disease, and particularly cancer"). In the instant case, the medical evidence and the expert opinion, in conjunction with the appellee's testimony of his symptoms and their onset, constitute sufficient evidence to raise a fact issue concerning the chain of causation from the condition to the event. The submission of the producing cause issue to the jury was proper. We hold that there was legally sufficient evidence to support the finding that the accident was the producing cause of the appellee's loss of sight.

Home's first, second, and third points of error are overruled.

■ In its fourth, fifth, sixth, and seventh points of error, Home claims that the appellee can not recover damages for the blindness in his right eye because he was legally blind, without the aid of corrective lenses, prior to the accident. Specifically, Home asserts that the appellee had had the lens of his right eye removed during cataract surgery, and that without correction his vision was 20/200. Therefore, because appellee was legally blind before the accident, based on his uncorrected vision, he suffered no disability as a result of the accident.

In support of its contention, Home cites *National Union Fire Ins. Co. v. Lucio*, 674 S.W.2d 487 (Tex.App.—El Paso 1984, writ ref'd). In *Lucio*, the employee was injured when a nail penetrated the eye necessitating the surgical removal of the lens. Without the lens, Lucio's vision was only 20/400, but with a contact lens and glasses, his vision was correctable to 20/20. On appeal, the insurer contended that because the vision was correctable, there was a fact issue about whether the employee had suf-

fered "loss of sight" under the act, making the summary judgment improper. The court held that, as a matter of law, the proper standard for loss of sight is the uncorrected vision.

We recognize that *Lucio* holds that uncorrected vision is the proper standard for evaluating vision *after* an injury. However, *Lucio* does not require that this same standard be applied to *pre-injury* vision evaluation. To apply the uncorrected standard to pre-injury vision would defeat the liberal rule of construction applied to the Workers' Compensation Act. *Hargrove v. Trinity Universal Ins. Co.*, 152 Tex. 243, 256 S.W.2d 73 (1953); *Texas Employers' Ins. Ass'n v. Thompson*, 610 S.W.2d at 210. This standard would also cause harsh and unjust results in meritorious claims by those who have corrected vision by glasses, contact lenses, and implants. *See National Union Fire Ins. Co. v. Lucio*, 674 S.W. 2d at 489 (Osborn, J., dissenting). For instance, in the present case, it is uncontroverted that the appellee's pre-injury uncorrected vision was 20/200 and his corrected vision 20/20. It is also uncontroverted that he received a blow to his head and lost the sight in his right eye resulting in total permanent blindness in that eye. It is further uncontroverted that the doctor performed five operations on the eye in an endeavor to restore the appellee's vision, but without success. These facts make a holding that the appellee did not have a compensable injury seem ludicrous.

We hold that under the Workers' Compensation Act, when an employee suffers a specific injury to an eye while in the course and scope of employment, which injury is the producing cause of total blindness, the proper standard for evaluating pre-injury vision is the corrected vision of the employee.

Appellant's fourth, fifth, sixth, and seventh points of error are overruled.

The judgment of the trial court is affirmed.